# AUGUSTA NAVAL STORES COMPANY *v.* FORLAW *et al.,*

## and *vice versa.*

1. The recovery in this case was against the defendants as trustees ex maleficio for the plaintiffs.

2. Where an auditor finds the defendants liable as trustees ex maleficio for profits due the plaintiffs, it is error to include in such finding profits which it is estimated will be made by the defendants during a period of time extending beyond the date upon which the hearing was concluded before him.

3. Where an attorney brought suit on a contingent fee, and afterwards, and before being offered as a witness, severed his connection with the case as attorney for the plaintiffs and was no longer interested in its result, he is not incompetent to testify to transactions between the deceased agent of a corporation sued in such case and the plaintiffs at a time when such attorney was not the attorney or agent for the plaintiffs, although he severed his connection with the case and disposed of his interest in the result of the litigation for the purpose of rendering himself competent as a witness upon the trial of the case.

(*a*) Such attorney was not incompetent to testify to such transactions because he drew the petition bringing the suit, and "had committed himself upon the identical question at issue about which he was testifying," and "was still under the strongest moral obligations and temptations to make good the allegations of his petition he had on file in the court."

4. The fees of an auditor, for reporting his "findings, rulings, proceedings and conclusions," are to be fixed by the trial judge within the limits prescribed in the Civil Code, § 4602, providing that such fees shall not exceed $1,000, or a certain per cent. specified in such section on the amount involved in the case tried by such auditor.

5. Where suit is instituted against a corporation and an individual as joint parties, to hold them liable on account of a transaction between

the plaintiffs and such defendants, and such defendants are jointly interested in the result of such suit, *held*, that upon the trial of such case the plaintiffs are not incompetent to testify to such transactions of the plaintiffs with a deceased agent of such corporation and such individual defendant.

6. The books of account of one of the defendants, showing an account between such defendant and one not a party to the suit, were not admissible to prove such account.

Argued January, 8—Decided August 11, 1909.

Exceptions to auditor's report.   Before Judge Hammond.   Richmond superior court.   August 19, 1908.

*William K. Miller* and *Joseph R. Lamar,* for plaintiffs.

*William H. Fleming,* for defendants.

HOLDEN, J.   Heath and Hogan, "partners 'in trade as the Augusta Naval Stores Company," filed a petition against the parties named therein, praying for an injunction, receiver, and other relief.   On demurrer all the defendants were stricken except D. J. Forlaw and the Ellis-Young Company (hereinafter called the defendants).   The case was referred to an auditor, who found, among other things, that the net profits of the business operated by the D. J. Forlaw Company were $12,361.92, and that the defendants were liable to the plaintiffs for one third thereof.   All exceptions filed by the plaintiffs and the defendants to the auditor's report were overruled by the trial judge, and the findings of the auditor were made the judgment of the trial court.   To the decision of the court, overruling their exceptions, a writ of error was sued out by the defendants, and afterwards a writ of error was sued out by the plaintiffs.   The petition filed by the plaintiffs, among other allegations, made the following:   The plaintiffs had leases on turpentine farms, and borrowed money from their factors, the Ellis-Young Company, to make payments on the same, and, to secure the repayment of the loan, transferred the leases to that company.   While some of these leases were outstanding, the plaintiffs secured from the Woodward Lumber Company another lease, covering the turpentine privileges on what is known as the Cashin mill tract, for which plaintiffs agreed to pay $6,000 and one half of the net profits derived therefrom.   Plaintiffs drew a draft for the $6,000 on the Ellis-Young Company, who did not pay the same, but sent their agent to inspect such farm and examine the title thereto.   John R. Young, of the Ellis-

Young Company, and D. J. Forlaw, after examining such property, suggested to the plaintiffs that, instead of their operating a turpentine farm thereon and the other farms leased by the plaintiffs, a corporation be formed to own all the leases referred to, and to operate the farms embraced therein, and that plaintiffs have one sixth each of the stock of such corporation; and that the Ellis-Young Company would advance the money to the plaintiffs to pay for such stock and repay themselves out of the net profits arising from the operation of the farms. It was further understood that D. J. Forlaw would take one third of the stock and John R. Young the remaining one third. Plaintiffs agreed to the proposed arrangement, and, to carry out the same, agreed that another lease of the Cashin mill tract might be made, whereby the Woodward Lumber Company was to receive none of the profits. In pursuance of such understanding, the Woodward Lumber Company made a lease with Forlaw for a consideration of $10,000, of which $5,000 was paid by draft on the Ellis-Young Company, and a draft payable one year from date for the remaining $5,000 was given on and accepted by said company, to whom the lease was assigned as security. "That during all this time, from November, 1903, down to the present time . . said work has been going on, has been conducted in the name of petitioners, petitioners being in possession of said property, both of the 3,713 acres and also of said 2,000 acres of the Cashin mill tract. That since January 9, 1904, petitioners, under the promise aforesaid, have been expecting the said parties, Forlaw, Young, and the Ellis-Young Company, to proceed with the corporation agreed upon, and have allowed the said Forlaw to go upon the turpentine farms aforesaid and supervise the same, they also being under the control of one Frank D. Christie, who was put in charge by petitioners when the work first started." Defendants refuse to carry out the contract, and "this refusal and breach of said contract by said parties was part of a scheme on the part of the defendants—except Woodward Lumber Company and Christie—to get control of the turpentine lands aforesaid, . . and to acquire control of the business and the property of the petitioners in their own interests, and to entrap and defraud petitioners, who in pursuance of said proposition also permitted the said Forlaw to supervise said business." Plaintiffs have made a tender to the defendants of the amounts paid out by

them, including the amount of the accepted draft. One of the prayers of the petition was as follows: "That petitioners be allowed to redeem the said leases conveyed as aforesaid, and that the said Forlaw, Young, and the Ellis-Young Company be required to transfer back to petitioners all of the leases obtained from petitioners, those set out in paragraph 7, and the lease from the said Woodward Lumber Company of 200 [2,000?] acres of the Cashin mill tract." By amendment the following words were added to this prayer: "And that defendants be required to account with petitioners as to the proceeds of the business done under said leases." The defendants in their answer denied that any contract was made whereby the plaintiffs were to have any share in any corporation to be formed, or were to have any interest in any of the turpentine farms.

1. The following statement appears in the statement of facts in this case when formerly before this court, reported in 124 *Ga.* 262, 268 (52 S. E. 901): "Forlaw and the Ellis-Young Company filed demurrers to the petition, upon the following grounds: (1) The petition does not set forth a cause of action against 'this defendant.' (2, 3). The contract of lease set forth in the petition is void, for the reason that it was not in writing and was not to be performed within a year from its date, and there has been no such part performance as to take it out of the statute of frauds. (4, 5) Defendants made no valid and binding contract for the formation of the corporation named in the petition; and Forlaw made the lease from the Woodward Lumber Company, not as the agent of petitioners, but in his own name. The court overruled these demurrers, and the defendants excepted. Young also demurred upon the ground that the petition set forth no cause of action against him, as it appeared that he acted only as agent and not individually. His demurrer was sustained, and the plaintiffs excepted." And in passing upon the questions made by such demurrers this court held: "The relation of principal and agent is a fiduciary one, and the latter can not make advantage and profit for himself out of the relationship, or out of knowledge thus obtained, to the injury of his principal; and the agency being established, the agent will be held to be a trustee as to any profits, advantages, rights, or privileges under any contract made and obtained within the scope and by reason of such agency, and he will

be compelled to transfer to the principal the benefit of his contract upon repayment to him of such sums as he may have expended in consideration of the same." See 6th headnote, 124 *Ga.* 262. In the opinion, p. 273, Justice Beck, in rendering the decision of the court, states: "If the allegations of the equitable petition in this action are true (and they are to be taken as true as against the demurrer), the Ellis-Young Company, the factors of plaintiffs, stand in a fiduciary relation to them, and, if the fraud and conspiracy alleged can be proved, are trustees ex maleficio; and the same is true of Forlaw, in whose name the lease from the Woodward Lumber Company was executed, should the same charges be established by the evidence." An amendment to the petition, allowed October 19, 1904, alleged: "That since the making of the contract set out in paragraphs 16, 17, and 18, that the said defendant, D. J. Forlaw, and his associates, on February 29, 1904, applied to this court and obtained a charter for the conduct of said turpentine business, a copy of the published application being hereto attached, as Exhibit C. That, in violation of said contract with petitioners, petitioners were left out of said proceeding as corporators, and denied any and all interest therein, notwithstanding, as hereinbefore alleged, they acted upon said contract, gave up and surrendered their contract for a lease with the Woodward Lumber Company, and allowed a new lease to be made to Forlaw and transferred to the Young Company, in order that the contract made as aforesaid might be carried out as contemplated. That petitioners fully performed their part of the contract as agreed upon with the defendants. That defendants, Forlaw, Young, and the Ellis-Young Company, wholly failed to comply with their contract with petitioner, and greatly endamaged petitioner thereby, in the sum of ten thousand dollars ($10,000.00), or other large sum, for which they pray judgment against the said parties and each of them. And plaintiffs amend prayer No. 4 by adding at the end thereof the following words 'And that defendants be required to account with petitioners as to the proceeds of the business done under said leases.'" If the defendants were held liable in damages for a violation of this contract, they would be treated as the owners of the leases and entitled themselves to the profits of the business done under them. Hence, the position the defendants would occupy if they were held liable in damages

for the violation of the contract to form the proposed corporation
is inconsistent with the position they would occupy if they were
held liable as trustees ex maleficio and as holding the property
and the profits therefrom in trust for the plaintiffs.    There was
no alternative prayer that if the defendants are not held liable as
trustees ex maleficio, and for "the proceeds of the business done
under said leases," the plaintiff be allowed to recover damages for
the violation of the contract to form a corporation with one third
of the stock thereof belonging to Heath and Hogan.    Whether
the plaintiff could, under this petition, elect to recover damages
upon proof of the existence and violation of the alleged contract
with the defendants to form the proposed corporation need not
be considered, as it appears from the auditor's findings that he
did not find that the defendants were liable in damages for a
violation of such contract, but found that they were liable for
profits which were made out of the operation of the farms under
the leases.    The auditor, among others, made the following find-
ings:    The agreement to form the corporation was made.    The
plaintiffs were to release the Woodward Lumber Company from
the lease they had, so that Forlaw could lease the Cashin mill
tract.    This lease by Forlaw was made and was to be in the inter-
est of Heath, Hogan, Forlaw, and the Ellis-Young Company.
This lease was made upon information given Forlaw by the plain-
tiffs.    "That a charter was secured for the proposed corporation
to work the Cashin mill tract of land and other tracts of land
leased to Heath and Hogan.    That said corporation was known
as the D. J. Forlaw Company, and worked said tracts of land.
That Heath and Hogan have not received one third interest in
said corporation."    That the Forlaw Company's books show a
specified number of turpentine boxes cut and cups hung on trees
on Cashin mill tract during the years 1904, 1905, and 1906, and
the number of crops being worked during the year 1907.    "That
966 bbls. of spirits will be the full yield of the Forlaw Company
—a total of 48,300 gallons."    The price of spirits and rosin paid
"by the E. Y. Co. to the Forlaw Company" for 1904, 1905, and
1906 was a specified amount.    The yield for 1907, and the estimated
price of same for 1907, was found to be the same as that for 1906.
Specified "items not on Forlaw Company's expense account should
be included to arrive at the legitimate expense attached to running

the Forlaw Company." "That the total sales amount to $48,-595.15. That the total expenses amount to $36,233.23. That the total profits for 4 years $12,361.92. That one third of the profit is $4,120.64. Judgment is therefore rendered in favor of the plaintiffs against the defendants, in the sum of forty-one hundred and twenty and 64/100 ($4,120.64) dollars."

The findings show that the auditor held the defendants liable, not for damages for the breach of a contract, but, as trustees ex maleficio, for profits resulting from the operation of the business. One third of the profits made by the defendants, or by the Forlaw Company, or by any other person or corporation, out of the leases could not be the measure of damages for the violation of the contract to form the proposed corporation in which the plaintiffs were to have one third of the stock. The profits from the management of the farms might be large or small, as the management was skilful and economical, or the reverse. To measure the damages for a violation of the contract by the profits made from the operation of the farms would make the damages depend upon the skill and economy of the operator. If the defendants were liable for a breach of the contract, the measure of damages would be the difference between the market value of a one-third interest in the leases on the different tracts which were to be operated by the proposed corporation and the contract price. There was no direct evidence of the market value of all of these leases, but the whole tenor of the evidence introduced by both sides indicates that the case was tried (and the findings of the auditor show that he decided the case) on the theory as to whether or not the defendants were liable for profits as trustees ex maleficio.

2. One of the exceptions of the defendants is as follows: "Defendants further except to the report of the auditor finding a judgment against D. J. Forlaw, because such finding rests upon the assumption that D. J. Forlaw occupied a fiduciary relation toward the plaintiffs; whereas there is no evidence whatever in the record to bear out that assumption." Another exception is as follows: "Paragraph 20 of the auditor's findings of facts reads as follows: '20. That 966 bbls. of spirits will be the full yield of the Forlaw Company—a total of 48,300 gallons.' Defendants except to this finding of fact, on the following grounds, to wit: (*a*) Because it appears on the face of the report that these 966

bbls. includes an estimate of 187 1/2 bbls. for the year 1907, for which year the auditor had no authority under the pleadings and the law to make a finding, certainly not after the date when his hearing of evidence was closed, Feb. 19, 1907." Another exception of the defendants to the finding of the auditor against the defendants including one third of estimated profits for the year 1907 is "that the profits for 1907 were not based on evidence, but were simply estimated to be the same as 1906, namely $4,434.75, whereas it appears on the face of the record that the hearing before the auditor was concluded Feb. 19, 1907, and the auditor had no authority of law to project his finding beyond the date of his investigation, nor did he have any authority of law to estimate the profits for the year 1907." At the time of the hearing before the auditor, no one had received the profits of the business for 1907, as the hearing was concluded on February 19, 1907. As the recovery was for profits received by the defendants as trustees ex maleficio, a finding of any amount of profits which the auditor found would accrue after the hearing was unauthorized. Unless Forlaw held this property and the profits therefrom in a fiduciary relation to the plaintiffs, the latter could not recover any money judgment against him. He may have been in the possession of the property for the Forlaw Company, a corporation of which he was the president. It does not appear that he was in the possession of the property, or that he operated it, in his individual capacity. The evidence does not show that he has received any profits from the operation of the business. All of the product went to the Forlaw Company. As far as disclosed by the record, the Forlaw Company has all of the profits, if there were any profits. The auditor found "That said corporation was known as the D. J. Forlaw Company, and worked said tracts of land," and he further made findings showing the amount of profits made by the D. J. Forlaw Company, and found against the defendants one third of them. Forlaw has stock in the corporation which received the product, but it does not appear that any dividend has been declared on the stock, or that the stockholders have received anything by reason of owning shares in such corporation. Forlaw, in this suit, could not be held liable for the profits received by a corporation simply because he was a stockholder therein, under the facts of this case. As his liability in this suit, as found by the auditor,

10

was for the profits he received out of the business, if he has received none, no recovery in this suit could be had for profits against him as a trustee ex maleficio. There is some evidence that the Ellis-Young Company and Forlaw together took the stock in the corporation, but that the former sold out its stock to John W. Motte and Willis W. Wilder. The charter shows the stockholders to be Forlaw, Motte, and Wilder. It does not appear when the Ellis-Young Company sold out, nor does it appear that it had any interest in the corporation when any of the products of the farms were gathered therefrom. Before the plaintiffs could recover any profits of the defendants as trustees ex maleficio, the burden was on the plaintiffs to show that the defendants received such profits, and the amount received, or facts from which the amount could be ascertained. The only theory on which the plaintiffs could recover any money judgment for profits against the defendants as trustees ex maleficio is that the defendants were, as agents of the plaintiffs, in possession of the property of the plaintiffs, and, as agents or trustees of the plaintiffs, received the profits, which they held for the plaintiffs. If the defendants have not been in possession of the property and have not operated the business and have not received any profits from the business, there can be no recovery against them on this theory. The Forlaw Company was no party to this case. But the defendants were sued as trustees ex maleficio for profits made and received by them. The court erred in not sustaining the exceptions hereinbefore referred to, complaining that the findings of the auditor embraced estimated profits for the year 1907. If one or the other exceptions above quoted is not sufficient to cover the point that the evidence is not sufficient to show that Forlaw received any of the profits, because it does not show that he occupied any fiduciary relation towards the plaintiffs with reference to these profits, the other exceptions that the auditor erred in embracing in his findings estimated profits for 1907 must unquestionably be sustained. These estimated profits are stated in the findings, but we do not think it proper to direct that one third of them erroneously awarded against the defendants be written off and the finding for the balance be allowed to stand. Under all the facts in the record and the rulings made in this decision, and especially as the finding by the auditor of a money judgment against the defendants on the theory of the liability of the de-

fendants for profits as trustees ex maleficio was error because the plaintiffs failed to carry the burden of showing that the defendants have received any of the net profits from the operation of the turpentine farms, all of the findings of the auditor should be set aside and a de novo investigation had.

3.   Defendants filed exceptions to the ruling of the auditor in excluding specified portions of the testimony of William H. Fleming, a witness for the defendant.   The telegrams, letters, and telephone communications between the witness Fleming and defendants or their agent, under the facts of this case, were inadmissible. Whatever transpired between the plaintiffs and the defendants and Fleming was relevant, and the latter could testify to such transactions.   The opinion and conclusion of the witness Fleming, as to whether he did or did not have authority to do an act for one for whom he was acting, were inadmissible.

It is further complained by defendants that the auditor permitted the plaintiffs to offer in evidence only a portion of a letter from Young, one of the defendants, to Fleming, without offering the whole of the letter.   Where a letter is admissible, a portion of it can be offered in evidence without offering the whole thereof; but after one of the parties introduces such portion, the opposite party has the right to have go in evidence so much of the balance of the letter as is relevant.   See Civil Code, §§ 5196, 5241; *Brown* v. *State,* 119 *Ga.* 572 (46 S. E. 833).

Defendants also excepted to the ruling of the auditor in overruling their objections to the testimony of F. G. Lockhart, a witness for the plaintiffs, relating to a conversation between the plaintiffs, Young, Forlaw, and himself, on the ground that Young was dead.   One of the objections to this testimony was that Lockhart brought the suit for the plaintiffs upon a contingent fee of one fourth of the recovery, and sold out his interest for a worthless past-due bond of the Augusta and Elberton Railroad Company a few days before he was offered as a witness, and this was done at the request of the plaintiffs for the purpose of qualifying himself as a witness to testify in the case.   We think if Lockhart brought the suit for the plaintiffs upon a contingent fee, and afterwards. and before he was offered as a witness, became disconnected with the case as an attorney and ceased to be interested in its results, he could not be excluded from testifying on the ground of having

previously had an interest in the case, although he severed his connection with the case and disposed of his interest in whatever litigation might be had for the purpose of qualifying himself as a witness. Nor do we think he was incompetent to testify because he drew the petition bringing the suit and "had already committed himself upon the identical question at issue about which he was testifying," and "was still left under the strongest moral obligations and temptations to make good the allegations he had already placed in the petition of file in court."

4. The judgment rendered by the trial judge upon the report of the auditor was that the plaintiffs recover of the defendants the amount found by the auditor and all the costs and expenses of the litigation, "and also the fees of the auditor and all expenses (excepting stenographic fees heretofore paid by the parties) which are hereby fixed at $500, one half of which is to be paid by plaintiff and one half by defendant." The defendants assign error upon this judgment, because: " (1) There was no authority of law to charge defendants with 'any expenses' connected with the hearing before the auditor, outside of the fees prescribed by the statutes in such cases, as found in Code 4602—and defendants having already paid their share of the stenographer's charges, there being no evidence before the court of any other 'expenses.' (2) Because the judge had no authority to fix the auditor's fees at $500, as the law in Code section 4602 expressly prescribes the same as follows: 'In cases involving less than $1,000, an amount not to exceed $50; cases involving more than $1,000 and less than $5,000, not more than 1 1/2 per cent. on the excess over $1,000 in addition to the fee above named,'—inasmuch as the record shows that the case at bar involved at most $4,120.64, the amount of the judgment against defendants, the fee would necessarily be $50 plus 1 1/2 per cent. on $3,120.64, which would be $46.80, and this added to the $50 would make a total fee of $96.80, showing an excess of fees allowed the auditor of $403.20." It is contended that there were no expenses incident to the hearing before the auditor, chargeable to the defendants, except their one half of the charges of the stenographer, which they paid, and that there was no evidence before the court of any other expenses, and that the $500 allowed the auditor was more than he was entitled to as fees under the law. The fees of the auditor should not be regulated by the amount

found by the auditor to be due the plaintiffs by the defendants.
If this were the measure of the auditor's fees, if he found that the
defendants were not due the plaintiffs any amount, the auditor
would be entitled to no compensation, regardless of the amount of
labor done by him. The amount upon which the auditor should
have fees, according to the Civil Code, §4602, is the amount in-
volved in the case, and not the amount of the judgment rendered
by the auditor. The judgment of the court below, fixing the
"fees of the auditor and all expenses" at $500, is set aside. Un-
der the record, this court can not tell what expenses were allowed
besides the fees, and we think it proper that the judgment should
be set aside and the trial judge render judgment for the proper
amount of fees of the auditor and such expenses, if any, as may
have been incurred and are properly chargeable to the parties.
The Civil Code, §4602, provides that the trial court shall fix the
fees of the auditor as therein provided, and this court has no au-
thority to fix the amount of such fees.

5. The plaintiffs testified before the auditor to transactions
between them, Young (the agent of the Ellis-Young Company),
and Forlaw. The auditor excluded this testimony, because Young
was dead. The plaintiffs filed exceptions to this ruling. We
think this ruling of the auditor was error. In the case of *Dolvin*
v. *American Harrow Co.,* 131 *Ga.* 300 (62 S. E. 198), it was said:
"In a suit instituted by a corporation the defendant is not com-
petent to testify in his own behalf to transactions or communica-
tions had by him solely with a deceased agent of the corporation,
and the fact that such transactions or communications were had in
the presence of third persons in no way connected with the corpora-
tion does not alter the rule." Civil Code, §5269, par. 3, is as fol-
lows: "Where any suit is instituted or defended by a corporation,
the opposite party shall not be admitted to testify in his own behalf
to transactions or communications solely with a deceased or insane
officer or agent of the corporation." We do not think this section has
any application where the transaction testified about by one of the
parties thereto was with a deceased agent of the corporation and an-
other, where on account of such transaction the latter and such cor-
poration were jointly sued and jointly interested in the result of
such suit. In this case Heath and Hogan contended that they
made a contract with the Ellis-Young Company, a corporation,

and Forlaw, and the latter and the corporation were jointly interested. .This suit grew out of the transaction between the plaintiffs and the deceased agent of the corporation and Forlaw. At the time of the transaction the deceased agent and Forlaw were both present; and we do not think that the death of the agent would prevent the plaintiffs from testifying to the transactions occurring between the plaintiffs and the deceased agent, when Forlaw, the joint defendant with the corporation and the one jointly interested with it in the alleged transaction, and jointly interested in the result of the suit, was present. This was not a transaction of the plaintiffs *solely* with the deceased agent of the corporation, but was a transaction with such deceased agent and the other defendant, Forlaw, who was competent to testify to such transaction.

6. The defendants introduced in evidence extracts, sworn to be correct, taken from the books of the John R. Young Company, successors to the Ellis-Young Company. They appeared to be copies of accounts of the D. J. Forlaw Company with the John R. Young Company. The plaintiffs objected to the introduction of these copies. The Forlaw Company was no party to this case, and no effort was being made to hold them liable to the plaintiffs in this suit. The accounts existing on the books of the Young Company with the Forlaw Company could not be introduced in evidence by the Young Company in this suit, as they would be nothing more than declarations in their favor.

Direction is given that all of the findings of the auditor be set aside, and a de novo investigation be had in such manner as may be determined by the trial judge.

*Judgment reversed. All the Justices concur.*