11596.   TERRY SHIPBUILDING CORPORATION v. O'DELL.

BROYLES, C. J.   1. The petition as finally amended was not subject to any ground of the demurrer interposed, and the court did not err in so ruling.

2. In view of the facts stated in the certificate of the judge, it does not appear that he abused his discretion in overruling the defendant's motion for a continuance.

3. In the light of the facts of the case and the charge of the court in its entirety, no reversible error appears in any of the excerpts from the charge as to which complaint is made, or in the refusal of the court to give the various requested charges.

4. No reversible error appears in any of the court's rulings upon the admissibility of evidence.

5. The verdict was authorized by the evidence, and, though large ($25,410), can not be held by this court to be excessive.

6. For no reason assigned was the overruling of the motion for a new trial error.

Judgment affirmed.   Luke and Bloodworth, JJ., concur.

DECIDED DECEMBER 23, 1920.   REHEARING DENIED JANUARY 10, 1921.

Action for damages; from Chatham superior court — Judge Meldrim.   May 7, 1920.

Application for certiorari was denied by the Supreme Court.

The base of a derrick kicked up and fell upon the plaintiff while it was being hoisted from the ground by himself and workmen of whom he was foreman, and he sued the corporation by which they were employed, alleging that he was thus injured by reason of the act of his superior officer in requiring two employees

to leave the base of the derrick where the plaintiff had directed them to stand for the purpose of holding it down so that it might not kick up and injure him or other employees. The petition contained allegations in substance as follows: The derrick was a frame made of timbers, was 10 or 12 feet wide at the base and about 32 feet high, and at the top was about 2-1/2 feet wide. It had been lying prone upon the ground, and it was the purpose of the plaintiff and the gang of which he was foreman, consisting of 12 or 15 men, under the supervision of his and their foreman and superior officer, Monk, to raise the derrick to an upright position. After two of the men in his gang had taken their places at the corners of the base of the derrick as ordered by him, to prevent it from kicking up, as stated above, the plaintiff and the other employees began to raise it to an upright position and had it raised to an angle of about 45 degrees from the ground, and when it was at that angle the base kicked up and fell upon him. His superior officer, Monk, without informing him and without his knowledge, had ordered away from the base of the derrick to another point about the derrick the two men mentioned above, whose duty it was to obey the instructions of Monk, and they had obeyed that order without the knowledge of the plaintiff. It was alleged that this act of Monk was negligent, improper, and dangerous, and that the plaintiff's injuries were due entirely to the fault of the defendant because of this negligent act, and because the defendant, through its foreman, was not performing its work in a skilful, workmanlike, and proper manner, and because the defendant did not furnish to the plaintiff a safe and suitable place in which to perform his labor, the place having been rendered unsafe because of the conduct of the said foreman. It was alleged that the plaintiff was exercising all ordinary and reasonable care and diligence, and was free from fault. By amendment it was alleged: At the time the derrick fell the plaintiff was within about 15 feet of the base, facing the base. He could not see that the men had been removed from the base, because of the cross-pieces of the derrick, composed of timbers, 2 inches thick and 10 inches wide, and because of the X-braces between each of the said cross-pieces. These cross-pieces were in the derrick every 5 feet, and the X-braces were between each pair of cross-pieces; all of which obstructed his vision. He was also pre-

vented from seeing that the men had been removed because of the number of other men working about the derrick. Upon being removed by Monk, one of the men walked away from the base northwardly, about 40 feet to a guy line (the purpose thereof being unknown to the plaintiff), and the other man walked southward and got under the side of the derrick behind the plaintiff. The plaintiff's duties required that he should assist manually in instructing and demonstrating how the men should "walk up" the derrick. Specific allegations were made as to damages.

The defendant demurred to the original petition and to the petition as amended, on the ground that no cause of action was set forth. The allegation that the plaintiff's duties required that he should assist manually, etc., was demurred to as stating a mere conclusion; other allegations were demurred to upon this ground, and there were various other special grounds of demurrer.

A motion for a mistrial and for a continuance was made by the defendant on the ground of surprise by an amendment of the petition, relating to the identity of the two men alleged to have been stationed at the base of the derrick. A prior amendment, in response to special demurrer, was made on November 25, 1918, in which the plaintiff alleged that the two men were colored, but he did not know and had no means of ascertaining their names, and that the names were in the possession of the defendant. At the trial, on July 22, 1919, it was testified by a witness for the plaintiff that the two men were white and one of them was named Stanley. The defendant objected to this testimony, because of variance between allegation and proof. The plaintiff amended the petition by alleging that the two men were white. The defendant then made the motion stated above, "stating in his place the substance of code-section 5714," and stating that the defendant's employees, who, at the time of the injury in question, were engaged in the construction of a large shipbuilding plant for the United States government, were numerous and had been rapidly brought together from widely separated parts of the county to meet a temporary emergency, and afterwards separated, going to places unknown to the defendant, but it was probable that these men could be found before the next term of court; that until this last amendment was made, the presence of these men was unneces-

sary for the defense, as the defendant could have made out its defense by refuting the allegation that two colored men were stationed at the base of the derrick and were removed. The court postponed the case for a day, and offered to postpone it five days; the motion was insisted upon, and the court overruled it, stating that the defendant had "nine months to ascertain a fact that they could have learned from the foreman Monk or their records in a few minutes," and that if a continuance until the next term were granted, a delay of six months would result; and that it was not averred that the defendant did not know of the whereabouts of the two men, and it did not appear that any diligence had been exercised to discover them.

The amount of the verdict for the plaintiff — $25,410 — was alleged to be excessive. From the evidence it appeared that he was a carpenter, 43 years of age, earning $5.50 a day as wages, at the time of receiving the injuries complained of, about two years before the time of the trial. His back and spine were injured, the fourth lumbar vertebra was fractured, and the lumbar curve practically destroyed; he could not bend the small of his back, it was what is known as a "poker back," and was as stiff as a poker; his sexual capacity was destroyed; he suffered a misplacement of the vertebra which produced pressure upon the termination of the spinal cord, and it was testified that this pressure would tend to cause paralysis. Physicians testified that his disability as a laboring man was total at the time of the trial, and that he was permanently injured, but might in the course of time regain from 25 to 35 per cent. of his former capacity. He was in a hospital for about a month and had to use crutches about six months, and afterwards had to use a cane in walking. He testified that he was unable to labor; that the only thing he could do was "something sitting down," and he did not "know of such a job;" he could not do carpenter work at all; he had little strength and had not earned anything since he was injured; he had suffered great pain from his injuries. There was proof as to physician's bills.

*Osborne, Lawrence & Abrahams, Hitch & Denmark,* for plaintiff in error.

*Oliver & Oliver,* contra.