### 32255.   ATLANTIC COAST LINE RAILROAD COMPANY *v.* WELLS.

Decided February 10, 1949.   Adhered to on rehearing March 29, 1949.

*Alston, Foster, Sibley & Miller, William B. Spann Jr.,* for plaintiff in error.

*T. J. Lewis, Richard M. Maxwell, B. P. Gambrell,* contra.

GARDNER, J. ■ Under special ground 1, the letter which the court refused to allow in evidence against the demand of the defendant is as follows: "Mr. P. H. Wyatt, Claim Agent, Sanford, Florida. Dear Sir: After consulting with Dr. Fort at Jacksonville yesterday, August 26th, and from what he told me concerning my injuries, I feel that I will be able to return to work on October 1, 1947. While I will not be completely well and in my opinion will never be, as both my feet are still giving me plenty of trouble, as Dr. Fort said my arches have fallen and that I should wear made-to-order shoes, also my neck has arthritis which makes it very stiff and sore and I still have to take aspirin or sleeping capsules two or three times a week to get some rest. Dr. Fort said he could not say what caused the arthritis or when it started, but I know that I was not bothered until after the wreck on December 4, 1946. I do know that I had to lay out on the cold wet ground in a light sprinkle, at Campbell, about 45 minutes, before I was carried to the hospital. I have been bothered with a stiff neck since, and according to Dr. Fort there is nothing that can be done about it. He said my neck had the stiffness of a man fifteen years older than I am. Due to the fact that I feel that my feet and neck, and maybe my back later on, will always cause me trouble and that I have suffered severe pain and will have to lose many days work in the future caused by this accident, and that the accident was caused by an inexperienced man that had been reported the trip before by the same conductor as not being safe, and that the company takes the blame in Mr. Windham's bulletin No. 7542 of January 13, 1947—I hereby ask the Atlantic Coast Line Railroad Company for the sum of $10,000 to be paid as com-

pensation for pain and suffering, wages for time lost not to be considered, as I will waive the wages if the $10,000 is paid, as stated. Also, Article No. 57 of the Relief Department not to enter in. Also, all doctors and hospital bills to be paid by the company from December 4, 1946, to October 1, 1947. I do not feel that I am asking too much as I have given the Company 28 years of my life, am now only 48, and had I been killed or lost a limb the sum would have been much more. I also ask the Company that if I see that I can not work regularly due to this accident, that they will not stand in my way for a pension on disability. Yours very truly, (s) J. R. Wells."

In special ground 2, error is assigned because the court disallowed the same letter when offered in evidence with the figures showing the amount of the proposed compromise deleted by the defendant. Special ground 3 assigns error, because the court excluded from evidence the first sentence of the letter without offering the remainder of the letter. The Code § 38-408, provides as follows: "Admissions obtained by constraint, or by fraud, or by drunkenness induced for the purpose, or admissions or propositions made with a view to a compromise, are not proper evidence." The Code section to which reference is made seems to be very broad and excludes the introduction in evidence of propositions with a view to compromise and also admissions made with a view to compromise. The evidence reveals that the plaintiff and the claim agent had for some time prior to writing the letter several discussions regarding the contention of the plaintiff and a settlement with him. After this the plaintiff wrote the letter in question in longhand and requested the claim agent to type it and send it in. This the claim agent did. When the claim agent Wyatt was on the stand testifying on behalf of the defendant, he said, according to the record: "This letter was written after he [meaning the plaintiff] had seen Dr. Fort [Dr. Fort being a physician of the defendant company], but that wasn't his first visit. I had been discussing the settlement of his case. He wrote the letter in pencil, brought it to me, and asked me if I would type it off and I did. No, we never did get together on a settlement. I made numerous visits to him, and he to me at my office." It will thus be seen that according to the evidence of the claim agent the defendant and the plaintiff

had been negotiating for a settlement and had been discussing the plaintiff's physical condition as to when he would be able to return to work. At the time the letter was written the plaintiff had not entered suit and of course the defendant had not filed its answer. After the plaintiff did enter suit the defendant then filed the further answer, as above quoted verbatim. We call particular attention in this connection to the portion of the further answer: "Defendant states that it has at all times been ready and is now ready to pay the plaintiff for the full time lost between December 4, 1946, the date of the injury, and October 1, 1947, the date on which the defendant avers that the plaintiff was able to return to work . . such amount to be supplemented by a reasonable award for pain and suffering, such award to be fixed by the jury trying this case." It will be further noted, in this connection, that the letter in question did not state that the plaintiff had recovered, but it stated that after talking with Dr. Fort, the plaintiff's physician, the plaintiff thought that he would be able to return to work on October 1, 1947. It further stated that he was not well, and that he would never be well because of the injuries received. We call attention to these portions of the record, for they make clear to our minds that the whole letter as set out in this special ground, and the portion of the letter with the amount of $10,000 deleted, were properly excluded by the trial judge. So far as the special grounds 1 and 2 are concerned, in view of this record and in view of the Code section above and the wording of the letter itself, the letter as a whole as set forth in special ground 1, and the letter offered in special ground 2 with the amount of $10,000 deleted, were properly excluded. See, in this connection, *Ocean Accident &c. Corp.* v. *Jones,* 56 *Ga. App.* 820, 823 (2) (194 S. E. 75); *Tufts* v. *DuBignon,* 61 *Ga.* 323 (3); *Emery* v. *Atlanta Real Estate Exchange,* 88 *Ga.* 321 (3) (14 S. E. 556); *Georgia Ry. & Electric Co.* v. *Wallace,* 122 *Ga.* 547, 550 (50 S. E. 478); *Duncan* v. *Bailey,* 162 *Ga.* 457 (134 S. E. 87); *Slade* v. *Raines,* 165 *Ga.* 90 (5) (139 S. E. 805); *Washington Manufacturing Co.* v. *Wickersham,* 201 *Ga.* 635 (1d) (40 S. E. 2d, 206).

In special ground 3, error is assigned on the ground that the court refused to admit in evidence, over the demand of the defendant, the first three lines of the letter which the plaintiff

wrote to the claim agent. It is our opinion that, since the letter was as to one subject-matter only, that is, the condition of the defendant and the amount that he would take in settlement, it was inadmissible as a whole, and when torn apart no portion of it was admissible. But we may conclude for the purpose of discussing special ground 3 that the court did err in refusing to admit in evidence the first three lines of the letter. Evidence to the same effect as contained in these three lines was admitted without objection. That letter was written on the same date as the letter refused to be admitted in evidence. It was written to Dr. W. P. Stoner, who was manager of the defendant's hospital in Waycross, as follows: "I was at Dr. Fort's yesterday, and he will mail his report to you. While he didn't find any bone structure in bad shape, I am still being bothered with my neck and both feet and some with my back. Neither shoulder is bothering me now. I do not feel like I should go to work before October 1st, but will come to Waycross for check-up whenever you say. The reason I say I shouldn't return to work before October 1st is I am afraid that after 12 to 16 hours a day (or night) on the engine my neck and feet would hurt so badly that I might take my mind off my job for a time and cause an accident. I would rather be safe than sorry." To sustain the defendant's contentions—(1) that the letter in question which the court refused to admit was nothing more than a demand for payment, (2) that it contained independent statements of fact highly material to the only issue in the case, (3) that the transaction of which the letter was a part, was laid before the jury by the cross-examination of plaintiff's counsel, (4) that, since liability was fully admitted and the only issue in the case was the extent and permanency of the plaintiff's injuries, the portion of the letter offered on the second and third grounds tendered could not be objectionable—counsel cite: *Broyles* v. *Haas,* 48 *Ga. App.* 321 (5d) (172 S. E. 742); *Sasser* v. *Sasser,* 73 *Ga.* 275, 283; *Teasley* v. *Bradley,* 110 *Ga.* 497 (35 S. E. 782, 78 Am. St. R. 113); *Teasley* v. *Bradley,* 120 *Ga.* 373 (47 S. E. 925); *Austin* v. *Long,* 5 *Ga. App.* 551 (63 S. E. 640); 31 C. J. S. §§ 285, 286, 287; Kugel *v.* Sterling, 164 Ill. App. 371. These decisions are cited as to the defendant's contentions in (1) above. See also *Williams* v. *Smith,* 71 *Ga. App.* 632 (31 S. E. 2d 873). We do not.

think that under the facts of this record these authorities are controlling.

As to question (2), defendant's counsel call our attention to *McCann Lumber Co.* v. *Hall*, 77 *Ga. App.* 455 (2) (49 S. E. 2d, 150); *Blakely Hardwood Lumber Co.* v. *Reynolds Bros. Lumber Co.*, 173 *Ga.* 602 (160 S. E. 775); *Mayor &c. of Columbus* v. *Howard*, 6 *Ga.* 213; *John Deere Plow Co.* v. *Anderson*, 29 *Ga. App.* 497 (3) (116 S. E. 38).

On contention (3), counsel call our attention to *Scales* v. *Shackleford*, 64 *Ga.* 170; *West* v. *Smith*, 101 U. S. 263, 273 (25 L. ed. 809); *Savannah, Fla. &c. Ry. Co.* v. *Holland*, 82 *Ga.* 257, 270 (10 S. E. 200, 14 Am. St. R. 158); *Haynes* v. *Phillips*, 67 *Ga. App.* 574 (21 S. E. 2d, 261); *Aycock* v. *State*, 62 *Ga. App.* 812 (10 S. E. 2d, 84); *Augusta Naval Stores Co.* v. *Forlaw*, 133 *Ga.* 138 (65 S. E. 370); 70 C. J. 713, § 863; 70 C. J. 702, § 855. There are several foreign decisions of which we will not take note. The above authorities are cited by counsel for the defendant in support of the contention that the court erred in not admitting the letter as a whole.

The last contention, (4), concerning the letter is to the effect that, if this court should hold that the letter was not admissible as a whole, it was admissible as specified in special grounds 2 and 3. In support of this fourth contention, our attention is called first to 20 Am. Jur. 769, § 913, and then to *Augusta Naval Stores Co.* v. *Forlaw*, supra. We have hereinbefore dealt with the admission of the portion of the letter when and as deleted. We do not think that we can add anything of benefit to what we have already said. We might add in conclusion, as to the contentions which we have hereinbefore dealt with, that each case, insofar as those contentions are concerned, must stand upon its own footing, and be viewed with the pleadings and the testimony —that is, the entire record—in order to judge correctly whether the footing is sound as a matter of law or waivering and uncertain. After having studied this entire record and the authorities submitted, we feel quite certain that the court did not err for any of the reasons assigned in special grounds 1, 2, and 3.

■ We will now consider the assignments of error in special grounds 4 and 5. They are to the effect that the court in its

■

charge failed to instruct the jury on the meaning of "permanent disability." It is contended by counsel for the defendant that, inasmuch as the only issue in the case was the extent of the defendant's injuries, and the alleged permanency of the disability, and since Dr. Stoner had used the term "permanent disability" in his testimony, the charge of the court was not sufficiently full on the meaning of permanent disability. There was no written request to charge. On this question the court charged: "You look to all the evidence on the subject that would illustrate this question to your mind and then decide from the evidence whether he suffered any injury that has caused loss of earning capacity, and, if so, what the injury is, whether it is permanent; if so, how long it will continue; will it continue, as he sets out, on into the future, or will he get well at some future time, sooner or later, as the case may be?" Further on, on this question, and immediately following the excerpt set forth above, the court charged: "You would also determine whether there is any impairment that would prevent him from obtaining or increasing his earning capacity in the future; whether it has decreased due to the injury he has received, and has permanently decreased, and will stay so, and to what extent it has decreased, if any, and to what time it will continue into the future, and if you believe his earning capacity has been permanently decreased, entirely or partially decreased, then say for yourselves for what period of time it is likely to endure; what his earning capacity was, as it appears from the evidence, and whether that earning capacity has decreased, and, if so, whether it will continue into the future and, if so, to what extent. Your method in determining this would be to see just what his capacity to labor and earn money in the future is, to what extent it has been impaired and, if you find that it is due to the injury he has received, how much less per annum will be his earning capacity in the future on account of the injury than he would have earned if he had not been so injured, and in arriving at that you would take into consideration what he may have been making, what he may have been earning at the time, if the evidence shows you, and what will be the reasonable amount of his earning capacity in the future. You would take into consideration all these matters as shown to you

by the evidence, and then you would determine how much less, if any, you think he will be able to earn on account of the injuries he has received, and the difference would be the amount of his annual loss. In other words, you should determine the annual loss, if there is an annual loss, on account of the injuries. Then you should determine how long you think in the ordinary course of human conduct the loss would continue, and from this evidence determine how long you think the loss would continue, if it is less than for life or if it is for life, the reasonable expectancy of his life, taking this into consideration, the fact of his present age, habits, surroundings, method of living, insofar as it is disclosed to you, the state of his health, any disease, not caused by this injury, or impairment, if there be such, with which he may be affected, and, if such disease or impairment exists, whether it might shorten his life, whether it may shorten his earning capacity, and then when you have determined the number of years that you think he would have lived, any certain particular number of years, you would take the figure represented by the annual loss and multiply it, if you find there was an annual loss, and that would give you the gross sum or loss under this particular specification. . . You will determine by a preponderance of the evidence whether or not he (the plaintiff) suffered pain and endured pain and suffering, to what extent, the mildness or intensity thereof, the period for which it was endured, whether it has ceased or will continue into the future, and consider the kind of injuries he received, the sort of injuries he received, if they are permanent in character, are they still continuing to produce pain, the mildness or intensity thereof, whether it has ceased or will continue into the future, and if so, to what extent and how long; also the nature of the injuries, whether they are permanent in character, and then, desiring to be just and fair to both parties, you will award to the plaintiff just such sum as you think would be fair compensation for the injuries received, for the pain and suffering endured, or to be endured, as the case may be, or both, and that he may endure into the future, taking into consideration the nature of his injuries and whether or not they are permanent in character, and the laws says that the amount thereof must be determined by you

without any yardstick or guide that the court can give you; that this item must be left entirely to the enlightened consciences of impartial jurors, keeping in mind that you should be fair to both parties, and let this rule be your guide, that it must be left to the enlightened consciences of impartial jurors." It is our opinion that the charge which the court gave on the subject was fair, ample, and clear to the jury as to whether or not he was permanently disabled. See, in this connection, *Callaway* v. *Pickard*, 68 *Ga. App.* 637, 646 (5) (23 S. E. 2d, 564). Counsel for the defendant call our attention to *Pennsylvania Mutual Life Ins. Co.* v. *Milton*, 160 *Ga.* 168 (127 S. E. 140, 40 A. L. R. 1382). The facts of that case distinguish it from those in the instant case. The assignments of error in special grounds 4 and 5 are not meritorious under the facts of the instant case.

■ We come next to consider the general grounds along with the last special ground, 6. It is contended that a reversal of the judgment of the trial court overruling the motion for a new trial should be granted, because it is contrary to the evidence and against the weight of the evidence and against the principles of justice and equity, on the ground that the verdict is grossly excessive and unfair under the facts of the case. We might state that there is ample evidence, aside from that for the defendant, that the plaintiff is and will always be physically incapacitated from following his occupation as engineer. There is undisputed evidence that at the time of the injury he was an able-bodied man 48 years of age, earning approximately $5500 per year, with an expectancy of life of 20 years or more. There is evidence in the record that the only illness the defendant had ever had was low blood pressure; that, as advised, he underwent an operation for tonsilitis, and that after such operation his condition cleared up. Dr. Stoner, in charge of the defendant's hospital at Waycross, who was a witness for the defendant, in response to a question, "What are the prospects of the claimant going back to work?" answered "Vague." To another question, "Is he permanently unfit for further railroad service?" Dr. Stoner answered, "Yes." Other physicians testified that the plaintiff would never be able to do hard manual labor. The jury was authorized to find that, at the time of the trial in 1948,

the plaintiff was suffering severely as a result of his injuries; that one of his ankles was then swollen; that he had pains in his hips, in his back, and in his shoulders; that when walking on uneven ground he had to walk sideways, he could not walk forward. When the plaintiff first went to the defendant's hospital in Waycross, Dr. Stoner treated him after the plaintiff had spent nine days in the hospital under the care of a physician of the railroad company in Kissimmee, Florida. He afterwards spent 30 days in the defendant's hospital in Waycross, and during that time the condition of his shoulders was such as a result of the injuries that they were immobile. He was given gas in order to stand the treatment of endeavoring to mobilize his shoulders. It is true that the expert testimony is conflicting, but it was generally testified by most of the physicians that the condition of the plaintiff from the time of his injury to within a short while of the trial could have been caused by the injuries received when he jumped from the engine and rolled over several times on the ground below. And the jury were authorized to infer that his physical condition was growing worse at the time of the trial.

On the question of excessiveness of the verdict, the Code, § 105-2015, provides: "The question of damages being one for the jury, the court should not interfere, unless the damages are either so small or so excessive as to justify the inference of gross mistake or undue bias." The trial judge heard this case and saw the witnesses on the stand testifying. He approved the verdict. In *Atlantic Greyhound Corp.* v. *Austin*, 72 *Ga. App.* 289, 292 (33 S. E. 2d, 718), this court held to the effect that it has no power to review the finding of the jury because the verdict is claimed to be excessive, unless it is clear from the record that their finding was prejudiced or biased or was procured by corrupt means; that this court does not have as broad discretionary powers as do trial judges in setting aside verdicts as being excessive; that, after the refusal of a new trial by the trial judge, the case comes to this court with a presumption in favor of the verdict and also with the stamp of approval of the judge who tried it; and that, where no prejudice or bias or corrupt means appear in the record in reaching the verdict, this court is without authority to set it aside. See, in this connection, *Langran* v.

*Hodges,* 60 *Ga. App.* 567 (4 S. E. 2d, 489). In Tennant *v.* Peoria &c. R. Co., 321 U. S. 29 (64 Sup. Ct. 409, 88 L. ed. 520), it was said in effect that the appellate courts were not free to re-weigh the evidence and set aside a jury verdict merely because a jury could have drawn a different inference or conclusion, or because the appellate judges feel that their judgments are more reasonable. See also *Candler* v. *Smith,* 50 *Ga. App.* 667, 677 (179 S. E. 395). In *Callaway* v. *Pickard,* supra, wherein the plaintiff in the court below received a verdict for $17,500 and a monthly wage of $110 per month, this court held that such verdict was not excessive. Our attention is called by the brief for the plaintiff to comparative verdicts. Henwood *v.* Chaney, 156 Fed. 2d, 392 (2); Bartlebaugh *v.* Penn. R. Co. (Ohio App.), 78 N. E. 2d, 410, wherein a verdict for $225,000 for personal injuries was affirmed. In a California case decided in 1935 (McDonald *v.* Standard Gas Engine Co., 8 Cal. App. 2d, 464, 47 Pac. 2d, 777), an award of $100,000 for injuries to head and cranial nerves was affirmed. In a Montana case, Fulton *v.* Chouteau County Farmers Co., 98 Mont. 48 (37 Pac. 2d, 1025), an award of $76,101 was held not excessive for the plaintiff, who was a man 61 years of age, on account of permanent injuries to his legs. In *Seaboard Air-Line Ry. Co.* v. *Miller,* 5 *Ga. App.* 402 (63 S. E. 299), it was held that a verdict for $25,000 for personal injuries was not excessive. In *Terry Shipbuilding Corp.* v. *O'Dell,* 26 *Ga. App.* 102 (105 S. E. 864), it was held that a verdict for $25,110 was not excessive. This case was decided in 1920. See also *Georgia Ry. & Power Co.* v. *Sims,* 33 *Ga. App.* 535 (126 S. E. 850). There are many other decisions on the same questions. In *City of Rome* v. *Davis,* 9 *Ga. App.* 62, 67 (70 S. E. 594), the court said: "The existence of prejudice or bias can not rest upon suspicion. That the verdict was the result of prejudice and bias must be shown; and even if individually we thought the verdict was large, we find nothing in the record to indicate that the jury were influenced by prejudice or bias."

Counsel for the defendant company call our attention to a number of cases where much smaller verdicts than that rendered in the instant case have been reached, but reduced for excessiveness, and also cite decisions to the effect that the appellate courts

may reverse a decision because the verdicts returned under the record were exorbitant. When we keep in mind the record in this case, and the fact that the value of the dollar is approximately fifty percent of what it was at the time of the rendition of the verdicts called to our attention, of which we think we may take judicial cognizance, we can not hold that the verdict in the instant case, under the record, is excessive.

The judgment overruling a motion for a new trial as amended is affirmed.

*Judgment affirmed. MacIntyre, P. J., and Townsend, J., concur.*