## A06A2143. NEVITT v. CMD REALTY INVESTMENT FUND IV, L.P.
### (639 SE2d 336)

PHIPPS, Judge.

George Nevitt is a lawyer who worked in a commercial office building owned and operated by CMD Realty Investment Fund IV, L.P. Nevitt brought this negligence action against CMD to recover for injuries sustained when he fell down a stairwell in the building. The jury returned a verdict in favor of CMD. Nevitt appeals judgment on the verdict. He complains of (1) the trial court's admission of a redacted version of a letter that he sent to CMD in an attempt to settle his claim before trial, (2) the court's admission of a recorded pretrial statement he gave to CMD after he had sent the letter, and (3) the court's refusal to allow him to amend the pretrial order to call two unlisted rebuttal witnesses. Finding merit in each of these claims of error, we reverse.

On June 19, 2001, Nevitt decided to use the stair hall in the rear of the building to take a letter to a mailbox located on the basement level. But upon entering the stair hall on the second floor and starting to walk down the steps, he recalled an occasion in August 2000 when, because of locking stair hall doors on the first, second, and basement floor levels, he had become trapped in the stair hall and had to exit the building via a loading dock on the basement level. He, therefore, turned to catch the closing door on the second floor of the stair hall before it slammed shut and locked. According to Nevitt, he then lost his footing and fell backward down a flight of cement steps to the landing below, sustaining serious and debilitating injuries to his head, neck, shoulders, and back.

Shortly before expiration of the applicable two-year statute of limitation, Nevitt sent a letter dated June 5, 2003, to CMD relating the circumstances surrounding the June 2001 incident, an estimate of damages, and an offer to forego a long and costly lawsuit if CMD would settle the matter. In the letter, Nevitt attributed the cause of his fall to the office building's violation of the Georgia building code by reason of the locked stair hall doors. Nevitt concluded the letter with a request that CMD's insurance carrier contact him by June 13 with its "highest authority to settle and compromise" his claim. On

June 12, 2003, Nevitt gave a recorded statement concerning the June 2001 incident to a CMD claims adjuster.

Having received no settlement offer, Nevitt filed this suit against CMD on June 19, 2003. His original complaint was filed pro se. But when CMD answered the complaint, counsel entered an appearance on Nevitt's behalf. Afterward, an amended complaint was filed adding negligent construction of the stairway with a slick, metallic stair nosing as a ground of liability. Nevitt supported that allegation with an affidavit in which he testified that after he turned in an attempt to prevent the door from closing, his left foot slipped on the top step and caused him to fall backward down the stairs.

The case was scheduled for trial beginning Monday, November 8, 2004. On October 26, Nevitt's attorneys provided CMD's attorneys with Nevitt's portion of the proposed pretrial order. CMD's attorneys consolidated their portion of the proposed order into Nevitt's and returned it to Nevitt's attorneys on Monday, November 1, requesting that Nevitt's attorneys provide any needed modifications so that the order could be filed when it was due on November 1. Nevitt's attorneys did not provide any changes until Wednesday, November 3, when they identified numerous additional exhibits.

On November 4, CMD filed a motion in limine to exclude a number of documents identified in Nevitt's new exhibit list. Among other things, CMD sought the exclusion of an exhibit purporting to be a letter from Nevitt to CMD dated August 22, 2001. The letter notified CMD of Nevitt's June 2001 fall and stated that it had been given to CMD's property manager "[v]ia hand delivery." In its motion in limine, CMD asserted that the August 2001 letter was never identified in discovery. Nevitt also moved in limine to exclude his June 2003 letter and his June 2003 recorded statement.

A hearing on the motions was held on Friday, November 5. At the hearing, counsel for CMD argued that a redacted version of Nevitt's June 2003 letter should be admitted to show the change in his explanation as to why he had fallen, i.e., to show a prior inconsistent statement. CMD's counsel argued that admissions of fact in a settlement letter unrelated to the offer of compromise are admissible. In agreement with CMD, the trial court ruled that a redacted version of Nevitt's June 2003 letter could be admitted to show the explanation he had given for his fall. And the court permitted a redacted version of the tape of Nevitt's June 2003 statement to be played to the jury. The court did not, however, rule on CMD's motion to exclude Nevitt's August 2001 letter.

In his opening statement, CMD's attorney remarked that the June 2003 letter was the only letter CMD had put in its tenant file concerning Nevitt until his attorneys produced the purportedly hand-delivered August 2001 letter on the eve of trial. Later in his opening

statement, counsel again stated that CMD "never had" the August 2001 letter and described that as "very suspicious."

In an apparent attempt to show that CMD had been given Nevitt's August 2001 letter, Nevitt called CMD's senior property manager, William Davis, for cross-examination at trial. On the stand, however, Davis insisted that CMD had not been given the August 2001 letter and was not given notice of Nevitt's personal injury claims until receiving the June 2003 letter.

Counsel for Nevitt thereupon moved to amend the pretrial order to allow him to call two rebuttal witnesses, Cheryl Hiser and Dan Boykin, to show that CMD had received Nevitt's August 2001 letter. Hiser was the CMD property manager, and Boykin was the assistant property manager, at the time of the June 2001 incident. Both were former CMD employees who had been disclosed by CMD in discovery responses as persons with knowledge about the case. Ultimately, the trial court ruled that Nevitt could not call either Hiser or Boykin as a rebuttal witness for essentially two reasons: (1) Nevitt's attorneys should have sought to amend the pretrial order to add these witnesses after CMD had filed its motion in limine and before defense counsel had made his comments about the letter in his opening statement at trial; and (2) notwithstanding defense counsel's comments in his opening statement, the only evidence on the issue had been presented by Nevitt when he called Davis for cross-examination.

1. The trial court erred in admitting the redacted version of Nevitt's June 2003 letter.

(a) The controlling Code section, OCGA § 24-3-37, provides in pertinent part that "admissions or propositions made with a view to a compromise are not proper evidence." " '[OCGA § 24-3-37] was created in order to encourage settlements by letting a party which makes an admission or proposition with a view toward compromise rest assured that its good-faith settlement attempt will not later be used against it in court.' "[1]

> When construing . . . OCGA § 24-3-37 . . . an important distinction has been noted between "an offer or proposition to compromise a doubtful or disputed claim, and an offer to settle upon certain terms a claim that is unquestioned. An admission made in an offer of the latter character will be admissible when one made in an offer of the former character will not."[2]

---

[1] *Allen v. Brackett*, 165 Ga. App. 415, 417-418 (1) (301 SE2d 486) (1983) (citation omitted).
[2] Id. at 418 (citation omitted).

Clearly, Nevitt's June 2003 letter was an offer to compromise a doubtful or disputed claim, as opposed to an offer to settle upon certain terms a claim that was unquestioned.[3] In numerous cases, we have found such letters inadmissible in evidence under OCGA § 24-3-37.[4] For a number of reasons, however, CMD argues either that OCGA § 24-3-37 does not apply to the June 2003 letter itself or to those portions admitted in evidence by the trial court.

(b) CMD first relies on cases such as *Pacific Nat. Fire Ins. Co. v. Beavers*,[5] which held that " 'the admissions of a party who may desire a settlement are not to be excluded where, so far as appears from the evidence, the opposite party did nothing to induce the statement and did not contemplate a compromise or abatement of his demand.' "[6] CMD's reliance on *Beavers* and like cases is misplaced because Nevitt's June 2003 letter, though not solicited by CMD, did contemplate a compromise of his demand.

(c) CMD also relies on the holding of cases such as *Computer Communications Specialists v. Hall*[7] that restrict application of OCGA § 24-3-37 "only to admissions which are made as a concession to bring about a compromise or settlement and not to *independent statements of fact* by a party, even though made while the parties are trying to settle."[8]

As to what might constitute an independent statement of fact, *Austin v. Long*,[9] cited in *Computer Communications*, distinguished between "statements of fact . . . even if made during negotiations for a settlement, when made independently or *without* a view of a compromise, and admissions made *with* a view to a compromise."[10] The court in *Austin* noted that this distinction had been pointed out in *Scales v. Shackleford*.[11] Although the plaintiff in *Scales* made an admission while the parties were trying to settle, the admission was made to third parties and not to the defendant in an attempt to advance or further the settlement. The *Scales* court thus concluded that the admission had not been made with a view to a compromise

---

[3] See *Butts County v. Hixon*, 135 Ga. 26 (3) (68 SE 786) (1910); *Atlantic Coast Line R. Co. v. Wells*, 78 Ga. App. 859, 861-865 (1) (52 SE2d 496) (1949).

[4] See *Mortensen v. Fowler-Flemister Concrete*, 252 Ga. App. 395, 397-398 (4) (555 SE2d 492) (2001); *McClintock v. Wellington Trade*, 187 Ga. App. 898, 903 (2) (371 SE2d 893) (1988); *Lamb v. R. L. Mathis Certified Dairy Co.*, 183 Ga. App. 455, 457 (5) (359 SE2d 214) (1987); *Hixon*, supra; *Wells*, supra.

[5] 87 Ga. App. 294 (73 SE2d 765) (1952).

[6] Id. at 297 (1) (citations omitted).

[7] 188 Ga. App. 545 (373 SE2d 630) (1988).

[8] Id. at 546 (1) (citations and punctuation omitted; emphasis supplied).

[9] 5 Ga. App. 551 (63 SE 640) (1909).

[10] Id. at 552 (emphases in original).

[11] 64 Ga. 170 (1879).

and was therefore admissible. *Bounds v. Coventry Green Homeowners' Assn.*,[12] also relied on by CMD, found that an independent statement of fact had been made during post-trial settlement discussions when the fact related to an issue that, though relevant to the outcome of the litigation, did not relate to any of the issues sought to be resolved in the settlement negotiations.

Like OCGA § 24-3-37, both the Federal Rules of Evidence and the Uniform Rules of Evidence prohibit the admission of statements made in compromise negotiations.[13] One of the requisites for invocation of those rules is that the purpose of offering the evidence is to prove the validity or invalidity of the claim or its amount.[14] Therefore, evidence offered for another purpose, such as showing bad faith, may be admissible.[15] Consistent with this application of the federal and uniform rules, this court held in *Holbrook Contracting v. Tyner*[16] that OCGA § 24-3-37 did not prohibit admission of evidence showing that the plaintiff had made a conditional settlement offer where the plaintiff maintained at trial that his offer had been unconditional.

Here, Nevitt sent a letter to CMD proposing a compromise of his claim. The trial court admitted those portions of the letter in which Nevitt had posited a factual explanation for his fall (that he had lost his footing while turning around to prevent the door from closing) and the legal grounds of liability (that the locking of the door in violation of the state building code was the proximate cause of his fall). These statements in the letter were admitted because of the inconsistency between Nevitt's claim in his letter that the proximate cause of his fall had been the building code violation and the allegation in the amended complaint that he had slipped on the slick, metallic stair nosing. Under the circumstances, CMD was thus allowed to use the statement in his letter as an admission by Nevitt that his fall had occurred for a reason different than that claimed by him in his pleadings. Clearly, the statement had been made by Nevitt to CMD with a view toward compromise of his claim. The statement was therefore an admission within the scope of OCGA § 24-3-37 and not an independent statement of fact within the meaning of the cases previously cited. Alternative pleading allegations being permitted, Nevitt's earlier statements were not admissible to show that the allegation in the pleading was made in bad faith. Even though those statements might otherwise have been admissible as inconsistent with the testimony given by Nevitt in the affidavit in support of his

---

[12] 268 Ga. App. 69, 72-73 (2) (601 SE2d 440) (2004).
[13] See 29 AmJur2d, Evidence, § 507 (1994).
[14] Id. at § 509.
[15] Id. at § 516.
[16] 181 Ga. App. 838 (354 SE2d 22) (1987) (physical precedent only).

amended complaint, the balance the law strikes in OCGA § 24-3-37 is to render the statements inadmissible for such purpose when made in an offer to compromise a doubtful or disputed claim.

2. It follows that the court also erred in admitting the redacted version of Nevitt's June 2003 recorded statement.

Nevitt gave testimony, uncontradicted by any evidence submitted by CMD, that he gave the recorded statement because the CMD claims adjuster had told him that it was necessary for Nevitt to do so in order for the adjuster to even discuss the matter. Admissions induced by an offer to enter into settlement negotiations are inadmissible as evidence.[17] And even if the claims adjuster made no such statement, she unquestionably induced Nevitt to give the statement concerning his version of the incident shortly after he sent a proposed settlement letter to CMD. Therefore, although they were not discussing the terms of a settlement agreement,[18] he certainly gave the statement "with a view to a compromise" of his claim, rendering it inadmissible under OCGA § 24-3-37.

3. The trial court also abused its discretion in refusing to allow Nevitt to call the unlisted rebuttal witnesses.

Although "[t]he decision whether to allow a party to introduce at trial (either in the case-in-chief or in rebuttal) the testimony of a witness not named in the pretrial order is a matter within the discretion of the trial court[,]"[19] we recognized in *Allstate Ins. Co. v. Reynolds*,[20] that "[t]he rule should obviously be more leniently applied in the case of rebuttal witnesses, where last minute decisions on whether to offer impeaching or contradicting evidence are the rule rather than the exception."[21] In *Minnick v. Lee*,[22] we held that the trial court had abused its discretion in refusing to allow the plaintiffs to present the rebuttal testimony of a witness who had not been listed in the pretrial order. In *Allstate Ins. Co. v. Reynolds*,[23] however, we found no abuse of discretion in the trial court's exclusion of the testimony of rebuttal witnesses not identified in the pretrial order.

Here, the trial court found that, at least by the time of the hearing on the motions in limine, Nevitt should have moved to amend the pretrial order to add Hiser and Boykin as rebuttal witnesses and that, after Davis had testified, there was nothing for Nevitt to rebut

---

[17] *Hill Bros. v. Render*, 33 Ga. App. 13, 14 (125 SE 79) (1924).

[18] Compare *Stover v. Candle Corp. of America*, 238 Ga. App. 657, 658 (1) (520 SE2d 7) (1999).

[19] *Nease v. Buelvas*, 198 Ga. App. 302, 303 (401 SE2d 320) (1991) (citation omitted).

[20] 138 Ga. App. 582 (227 SE2d 77) (1976).

[21] Id. at 587-588 (6).

[22] 174 Ga. App. 182 (1) (329 SE2d 548) (1985).

[23] Supra.

because Davis's testimony had been presented by Nevitt. Nevitt's attorney's position was that, at the time of the hearing on the motions in limine, he did not know what Hiser's or Boykin's recollection of events would be; when defense counsel made his opening statement, Nevitt's attorney began to try to locate and question Hiser and Boykin; he did not talk to either of them until the night before calling Davis to the stand; because they both remembered receiving the letter, Nevitt decided to cross-examine Davis with the expectation that he, too, would testify that CMD had received the letter; counsel did not realize it would be necessary to present Hiser or Boykin in rebuttal until Davis denied that CMD had ever received the letter. Given this chronology of events, like in *Minnick* though unlike *Reynolds*, the trial court should have modified the pretrial order so as to have allowed the witnesses to testify in rebuttal.

*Judgment reversed. Ruffin, C. J., and Smith, P. J., concur.*

DECIDED NOVEMBER 1, 2006 —
RECONSIDERATION DENIED NOVEMBER 22, 2006 — 

*Bondurant, Mixson & Elmore, Michael B. Terry, James D. Summerville, Lloyd N. Bell,* for appellant.

*Gray, Rust, St. Amand, Moffett & Brieske, Harvey S. Gray, Michael D. St. Amand,* for appellee.