### 2701.   CITY OF ROME *v.* DAVIS.

1. Where an excavation is made in a public street by permission or at the command of the proper municipal authority charged with the supervision of the street, the duty of seeing that the excavation is properly safeguarded rests upon the municipality.   In such a case it is not necessary to show that the city had notice of the condition of the street, be-

cause the work was to all intents and purposes done by the city itself, and the city is charged with knowledge of the exact condition.

2. Even though a permit be required to enable one to make excavations in the public streets of a city, and generally such a permit would be necessary as evidence that the work was authorized, still the necessity of a permit is obviated where the superintendent of public construction of a city, who by law has the supervision of all work upon the streets and the right to grant permits, either directs or expressly sanctions an excavation in the street.

3. The court correctly instructed the jury, and the finding for the plaintiff was authorized. There is nothing in the record to indicate that the amount of the verdict was influenced by prejudice or bias on the part of the jury.

DECIDED FEBRUARY 25, 1911.

Action for damages; from city court of Floyd county—Judge Hamilton. March 24, 1910.

*Max Meyerhardt,* for plaintiff in error.

*Ennis & Shaw,* contra.

RUSSELL, J. This is an action for damages, brought by Odessa Davis against the City of Rome. The municipality complains of a judgment refusing a motion for a new trial. The jury returned a verdict in favor of the plaintiff for $500. The several attacks upon the petition which were suggested in the written argument can not be considered, because it does not appear that there was any demurrer. The plaintiff proved her case as laid; and the defendant introduced no testimony. According to the testimony in behalf of the plaintiff, the young lady was riding in a buggy, accompanied by an escort, on her way to a place of amusement. It was after dark, and the middle of the street was obstructed by a large pile of stones, and at a certain place in the street· they met another vehicle and were compelled to turn to the right of the road. As they did so, the horse stepped into soft dirt, mired up, and fell on his head, throwing the young man out on one side of the buggy, and the young lady on the other, and breaking the shafts of the buggy. In the fall the young lady received injuries, which were described to the jury by herself and two physicians. It turned out that the horse stepped into a round excavation which had been dug by street hands of the City of Rome near a pipe ditch and water main of the Rome Foundry & Machine Works. The excavation had been filled in with soft, damp dirt, just about two hours before the accident occurred. Though the hole had apparently become partially refilled when witnesses examined it shortly after the plaintiff

was hurt, and was then only about a foot deep, it is very naturally to be inferred that, after the leg of the horse was extricated from the hole, the soft dirt caved in and filled it until it was only about that depth.

Under this statement of the facts, the three questions which are presented by the record are: (1) Who is liable? (2) Did the judge err in charging upon the subject of notice, and in holding that, if the city permitted the excavation, the duty was upon the city of safeguarding passers-by from danger? (3) Did the court err in charging that the ordinance of the City of Rome, requiring permits to be granted to any one wishing to make repairs in the streets, would not apply if the jury found that the superintendent of the board of public works gave direct orders for such changes, and required the changes to be made? The three questions may really be merged into one. It is admitted that the ditch was dug either by employees of the Foundry Company alone, or by such employees in conjunction with employees of the city, and the real question is: Was the City of Rome liable, even in the absence of a permit and of actual notice of the condition of the street?

The effect of the charge of the court was to tell the jury that if they believed that the excavation which injured Miss Davis was made by permission of the superintendent of public construction of the City of Rome, the municipality was liable for the damages. We think that this charge was correct. It is true, as has often been ruled, that excavations can not be lawfully made in a public street, except upon the permission of the municipal authorities. It is also a well-settled principle that a municipality can not be held liable for any obstruction or excavation in its public streets until it has notice of the existence of the defect, or until the defect has existed for such a length of time that notice of its existence on the part of the municipal authorities can be presumed. In the instant case it appears that the General Assembly, by the act amendatory of the charter of the City of Rome, approved August 22, 1907 (Acts 1907, p. 897), created a board of public works, which was fully empowered to take entire charge and control of all street work, and this board created the office of superintendent of public construction, and conferred upon the occupant of that office the superintendence and entire charge of the streets and other public works. In pursuance of this act, the board of public works of Rome elected

Mr. Worrell as superintendent; and there is undisputed testimony that Mr. Worrell not only asked Mr. Towers, as manager of the Rome Foundry & Machine Works, to make this excavation in connection with his water main, but that the tap hole and a part of the ditch were dug by employees of the superintendent, Mr. Worrell. Under this state of facts the Rome Foundry & Machine Works was not required to obtain a formal permit from the superintendent, for the reason that it appears that it was acting under direct orders; and the giving of a formal notice would have been entirely unnecessary, because Worrell must be presumed to have known all the facts in relation to the exact condition of the ditch that a written notice would have given him.

Under this state of facts the case is identical with that of *Mayor &c. of Savannah* v. *Donnelly, 71 Ga. 258*, in which the court was requested on the part of the city to charge as follows: "The granting of permission to Masters to make repairs or improvements in the supply pipe for Dickerson was lawful and innocent in itself, and cast no obligation on the city to superintend and look after said work, to see that it was properly done; and if said work was in fact carelessly and negligently done, then the city would not be liable for damages, unless notice of the condition of the street was brought home to the city, either actually or constructively." The court refused this request, and in regard to it Judge Blandford, in delivering the opinion of the Supreme Court, said: "We think the court did right to refuse this request. The fact that the city authorized and gave express permission to Masters to open a ditch across a street in the city, to connect the water pipes of a private person with waterworks belonging to the city, was in effect opening the ditch by the city itself. It was the act of the city; and it was liable for any damages which might accrue to any person by reason of the careless and negligent manner in which the work was done. It was the duty of the city to have superintended and overlooked the work which it permitted to be done on its streets, and to have seen to it that the work was done in such manner that no injury should come to any one passing along the street from any defect in the work. The question of notice, for these reasons, is not in this case." We will say, as Judge Blandford did, that the question of notice is not in this case.

In the case of District of Columbia *v.* Woodbury, 136 U. S. 450

(10 Sup. Ct. 990, 34 L. ed. 472), Mr. Justice Harlan approves of the principles covered by the following charge: "People must build houses, and in order to do that it is necessary to excavate for cellars and areas, if needed, and to dig trenches to connect with the water mains, gas pipes, and sewers. Nobody has a right to do this without a permit from the authorities, and, if any person undertakes to do it without a permit, he would be responsible for any injury resulting; but the District would not be, unless it had the notice already spoken of. If a permit is granted, as is usually the case, the fact is notice to the authorities that the work is in progress, and then they are charged with the duty of seeing that it is properly conducted." In the case of *City Council of Augusta* v. *Cone,* 91 *Ga.* 716 (17 S. E. 1006), in speaking of a point very similar to the one involved in the present case, Judge Simmons, in delivering the opinion of the court, said: "The declaration alleges special permission from the city council to do this particular work, and knowledge of its progress on the day in question; and the ordinance requires that a certain officer of the city shall exercise supervision over the work and see that it is properly done. This being so, the city became liable for any damage which might accrue to any person by reason of the careless and negligent manner in which the work was done." See, also, Jones, Neg. Mun. Corp. § 81; 2 Dillon, Mun. Corp. (4th ed.) §§ 1024, 1027; Stephens *v.* Macon, 83 Mo. 345; Wendell *v.* Troy, 43 N. Y. 261; City of Omaha *v.* Jensen, 35 Neb. 68 (52 N. W. 833(2), 37 Am. St. R. 432); Cleveland *v.* King, 132 U. S. 295 (10 Sup. Ct. 90, 33 L. ed. 334). The *Cone* case is similar to the case we are now discussing in the fact that it is also a case in which a water-main connection was being made with the knowledge and permission of the municipal authorities.

In City of Cleveland *v.* King, supra, the city objected to the introduction of any evidence on behalf of the plaintiff, for the reason that the petition was insufficient, and the second headnote of the opinion is relevant to that view of the present case which concerns the fact that Mahan, on account of the pile of stones in the middle of the street, was compelled to turn out of the street at the time that the horse fell and Miss Davis was injured. In the second headnote it is said: "Although a city only allows a reasonable part of a street to be used for depositing building materials thereon, and

requires the builder to indicate the locality of such materials by proper lights, that does not relieve the city from the duty to prevent the street from being so occupied as to endanger passersby, nor from the damages arising from a breach of such duty." The rulings in *Lewis* v. *Atlanta, 77 Ga.* 756 (4 Am. St. R. 108), and *Mayor of Jackson* v. *Boone, 93 Ga.* 662 (20 S. E. 46), cited by counsel for the city in this case, are not in point on the issues raised by the exceptions.

We think that in this case the evidence was amply sufficient to authorize the verdict, and there was no error in the charge of the court. The court, it is true, instructed the jury: "If you find that the ditch was open with the knowledge and consent of the superintendent of public works of the City of Rome, then it would be sufficient notice, and would imply notice to said city as to the condition of the street." The court also charged, that "If it appears to you that there is an ordinance requiring certain permission to be granted to a person wishing to make repairs in the streets, that ordinance would not apply in the event it appears that the superintendent of the board of public works gave direct orders for such changes, and required such changes to be made." Under the facts of this case, as already stated, we approve both of these instructions as being proper. They put clearly before the jury the only real issue, and thereby prevented the possibility of any confusion.

In the written argument in this case much stress was laid on the insistence that the damages awarded are excessive, that the injuries of the plaintiff are insignificant, and that the amount of the verdict is evidence that the jury were prejudiced or biased. The existence of prejudice or bias can not rest upon suspicion. That the verdict was the result of prejudice and bias must be shown; and even if individually we thought the verdict was large, we find nothing in the record to indicate that the jury were influenced by prejudice or bias. The law fixes no measure for pain and suffering except the enlightened conscience of impartial jurors, and perhaps the force of the complaint that the verdict is too large would be weakened if any one of us could substitute ourselves for the plaintiff in any particular case, and were forced ourselves to endure the suffering that the plaintiff endured. In any event, in the absence of plain proof that the verdict was the result of prejudice or bias, this court will not interfere. *Judgment affirmed.*