32392.   WESTERN & ATLANTIC RAILROAD *v.*
BURNETT, administratrix.

DECIDED MAY 20, 1949.   REHEARING DENIED JULY 8, 1949.

*Tye, Thomson & Tye, John Sammons Bell,* for plaintiff in error.
*Hewlett & Dennis, T. F. Bowden,* contra.

PARKER, J.  J. G. Burnett sued the Western & Atlantic Railroad for $100,000 damages for personal injuries alleged to have been sustained on account of the negligence of the defendant. The jury returned a verdict in favor of the plaintiff for $65,000, and the defendant moved for a new trial on the general grounds and on a number of special grounds.  The overruling of the defendant's motion for a new trial is before this court for review. The facts necessary in the consideration of the case will be stated in the opinion.

■ Special grounds 4, 7, 9, and 10 of the amended motion for new trial relate to excerpts from the charge of the court which are alleged to be erroneous.  The excerpt from the charge complained of in ground 4 dealt with the duty on the defendant of anticipating the presence of persons on the property of the railroad and to exercise ordinary care to protect such persons.

The charge complained of in ground 7 was this:  "Gentlemen, when you retire, it will be your duty first to consider this question of negligence pro and con, and if you find that the plaintiff cannot recover on account thereof you would stop there and write a verdict for the defendant."

The charge alleged to be error in ground 9 was as follows: "If he was injured as alleged, and if his injuries are permanent or will continue throughout his life, and if the evidence shows you with reasonable certainty the amount of money he will lose on that account in the future, he would be entitled to recover on that account, if entitled to recover damages at all."

Ground 10 complains of this charge:  "He claims that he has lost large sums of money on account of his inability to work and that he will continue to lose money throughout his future life."

The defendant does not argue either of these grounds in its brief except to say that they are not waived and are expressly insisted upon on each and every ground and reason therein set out.  No cases are cited by the defendant in support of the alleged error in these grounds.  We have considered these grounds carefully and in connection with the entire charge, and we do not find any error requiring the grant of a new trial.

■ Ground 5 of the amended motion avers that the court erred in refusing to allow defendant's counsel, on the cross-examination of a witness offered by the plaintiff, to ask the witness why

he did not incorporate in a written statement he had signed for the claim agent of the railroad company certain matter to which he testified on the trial. The witness had made an oral statement to the claim agent within two or three hours after the plaintiff was injured, from which the claim agent made pencil notes and then went off and typed it and sent it back to the witness who signed it. The witness had been asked this question: "Did you tell Mr. Ellis (the claim agent) anything about N. C. engine 536 passing your engine between Foundry Street and the concrete cross-over?," and had answered by saying "My best recollection is that I told him it did pass me." Thereupon counsel for the defendant asked the witness "Well, why did you not incorporate that in your written statement?" This latter question was excluded by the court upon objection by the plaintiff and this ruling is assigned as error.

Under the Code, § 38-1705, "The right of cross-examination, thorough and sifting, shall belong to every party as to the witnesses called against him." A substantial denial of this right is good cause for the grant of a new trial. However, "The scope of the cross-examination of a witness rests largely within the discretion of the judge." *Clifton* v. *State*, 187 *Ga.* 502, 508 (2 S. E. 2d, 102). "The trial judge has a discretion to control the right of cross-examination within reasonable bounds, and an exercise of this discretion will not be controlled by a reviewing court unless it is abused." *Fouraker* v. *State*, 4 *Ga. App.* 692 (3) (62 S. E. 116); *Rogers* v. *State*, 18 *Ga. App.* 332 (2) (89 S. E. 460); *Sweat* v. *State*, 63 *Ga. App.* 301 (4) (11 S. E. 2d, 40); *McNabb* v. *State*, 70 *Ga. App.* 798 (29 S. E. 2d, 643); *James* v. *State*, 71 *Ga. App.* 867, 870 (32 S. E. 2d, 431).

The defendant cites a number of cases to sustain its contention that this ground shows error, beginning with *Atlantic Coast Line R. Co.* v. *Powell*, 127 *Ga.* 811 (56 S. E. 1006, 9 L. R. A. (N. S.) 769, 9 Ann. Cas. 553), and including *Becker* v. *Donalson*, 133 *Ga.* 864 (67 S. E. 92); *Owens* v. *Shugart*, 61 *Ga. App.* 177 (6 S. E. 2d, 121); *News Publishing Co.* v. *Butler*, 95 *Ga.* 559 (22 S. E. 282); *Burch* v. *Wade*, 58 *Ga. App.* 385 (198 S. E. 563); *McGinty* v. *State*, 59 *Ga. App.* 675 (2 S. E. 2d, 134); *McRae* v. *Boykin*, 50 *Ga. App.* 866 (179 S. E. 535). We have examined all of these cases and find that they recognize and apply the

general rules that a party is entitled to a thorough and sifting cross-examination of the witnesses offered against him; that this is a substantial right, the preservation of which is essential to a proper administration of justice; that it is erroneous to unduly abridge this right of cross-examination, and to do so is generally cause for the grant of a new trial. These principles are well established in our law, but whether or not the trial judge abused his discretion in refusing one or more questions on cross-examination must be determined in each case under the facts thereof. The defendant also cites *Thompson* v. *State*, 181 *Ga.* 620 (183 S. E. 566), *Mitchell* v. *State*, 71 *Ga.* 128, and *Floyd* v. *Wallace*, 31 *Ga.* 688, which apply the rule that, where the purpose is to impeach or discredit the witness, great latitude should be allowed by the court in cross-examination. It appears that the cross-examination of the witness with reference to the written statement, and the testimony as to the particular matter not included in the statement, was very thorough and quite lengthy. Several pages in the brief of the evidence seem to relate very largely to the written statement of the witness; and the question excluded by the court was asked near the close of the cross-examination on this subject. We have considered this ground most carefully and have reached the conclusion that the failure of the court to permit the particular question complained of, in view of the length and scope of the cross-examination, was not an abuse of the court's discretion, and did not unduly restrict or limit the defendant's right of cross-examination. We find no error in this ground.

■ Complaint is made in ground 6 of the following charge of the court as to certain safety rules of the Central of Georgia Railroad and a rule of the defendant company which were pleaded by the defendant and introduced in evidence, to wit: "The defendant contends that the plaintiff violated certain rules which, before his injury, had been promulgated by the Central of Georgia Railroad for the guidance of its employees. The defendant also contends that the plaintiff violated a certain rule that had been promulgated by the defendant company for the government of its employees and that this rule governs the conduct of plaintiff for the reason that he was, at the time of his injury, upon the premises of defendant company and subject to its rules. The

court instructs you that the Central of Georgia Railway Company had the right to make reasonable rules to govern the conduct of its employees, and that defendant company had the right to make reasonable rules designed to govern the conduct of Central of Georgia Railway's employees while on its premises.

"After the introduction of rules, it becomes your duty to consider whether or not such rules were applicable to the situation and surroundings under investigation. If you believe that the rules, or any of them, which have been introduced in evidence are not applicable to the situation under investigation, then you should not consider such rule or rules deemed not applicable any further.

"If you should find that any one of these rules by reason of its generality of statement or because of any ambiguity, admits of more than one interpretation in application to a given set of facts, then such rule or rules must be construed most strongly against the company promulgating such rule, and in favor of plaintiff's blamelessness. In such an event, the rule so found will not be held to impose upon the plaintiff a particular duty unless such duty be comprehended within the clear meaning of the rule itself.

"However, if you believe that any one or more of the rules introduced in evidence were applicable to the situation under investigation, and if you believe further that such rule or rules were violated by the plaintiff, you would then consider further whether or not such violation has been negligence proximately causing or contributing to cause injury to plaintiff.

"The defendant in this case contends that the rules in question were applicable to the situation under investigation and it also contends that they were violated by the plaintiff, and that such violation was negligence on the part of the plaintiff. The plaintiff denies this contention of the defendant and contends further that the rules introduced in evidence had no application to the situation under investigation. These are questions of fact for you to determine, like all other questions of fact in the case. If you determine that any rule was not applicable, or, if applicable, that it was not violated, then you would not consider that rule further in connection with the law that I have given you in charge respecting rules."

The rules of the Central of Georgia Railway Company introduced by the defendant were as follows: *"Getting on or off locomotives or cars.* 1406. Look in both directions for trains, locomotives or cars on adjacent tracks." *"Walking or standing on tracks or platforms.* 1603. Crossing tracks closely in front of moving trains, locomotives or cars is prohibited." The rule of the defendant introduced by it was as follows: *"Rules governing the operation department guarding against injury and accident.* 322. Do not rely upon others to give notice of the approach of an engine or train or remain near the track while trains are passing, as coal, stone, timber, car doors or other articles are liable to fall from the train. On double tracks stand outside and clear of both tracks."

The exceptions to the first paragraph of this charge are that the court erred in using the word "reasonable" as a qualifying adjective in describing the kind of rules the railroads could make. It is contended that the defendant railroad could make any rules whether reasonable or not governing the conduct of third persons on its premises, and that the principle given in charge had no application to the defendant because the relationship of master and servant did not exist between the defendant and the plaintiff; and that the reasonableness of such rules was not a question of fact for the jury, but was a question of law for the court. Under the ruling in *Seaboard Air-Line Ry.* v. *McMichael,* 143 *Ga.* 689 (4) (85 S. E. 891), we do not think that this paragraph of the charge necessarily left to the jury for their determination the reasonableness of the rules referred to. As stated in that case, "If counsel for the movant had desired the court to pass explicitly upon the question whether the rules were reasonable or not, they should have so requested."

The exception to the second paragraph of the charge is that it was error for the court to submit to the jury the applicability of the rules to the facts of the case. The contention is that the evidence disclosed that such rules were applicable and that the submission of such question to the jury was error. It is true as contended by the defendant that the plaintiff admitted his general knowledge of the rules as introduced in evidence, but the evidence was in dispute as to whether the plaintiff was struck by the engine of the defendant as he alighted from the train

which was being backed into the Union Station, or whether he had alighted from the train and had walked some distance before being struck. The plaintiff testified that he looked for trains, locomotives or cars before getting off his train, as required by rule 1406, and there was no evidence that the plaintiff was crossing tracks closely in front of moving trains, locomotives or cars as prohibited by rule 1603. Whether or not rule 322 in its entirety was applicable to the situation as it existed in the railroad yards of the defendant where the plaintiff was injured would seem to be at least debatable. We think it is manifest that the three rules referred to related to different possible situations and environments, and under some phases of the evidence the jury was authorized to find that some parts of the rules were applicable, and was authorized to find under other aspects of the evidence that other portions of the rules were not applicable. The jury was the proper tribunal to determine these questions of fact. For the court to have determined the applicability of the various provisions of the rules would have necessarily involved the duty of determining the facts as related to such rules, and this would have been clearly error as transgressing the exclusive province of the jury.

The defendant relies on the ruling in *Central of Georgia Ry. Co.* v. *Motes*, 117 *Ga.* 923 (43 S. E. 990, 62 L. R. A. 507, 97 Am. St. R. 223), which relates not to a safety rule for the guidance of employees, but to a regulation as to passengers sleeping in waiting rooms, and holds that whether or not such regulation is reasonable is a question of law, and not a question of fact. We do not think that ruling is applicable under the facts of this case where the evidence is in conflict as to the facts. It was held in *Austin* v. *Central of Ga. Ry. Co.*, 3 *Ga. App.* 775 (3) (61 S. E. 998), that whether a rule in question was applicable to an employee who was injured, and whether it had been abrogated, were, under the evidence submitted, jury questions. In *Atlantic Coast Line R. Co.* v. *McElmurray Bros.*, 14 *Ga. App.* 196 (4) (80 S. E. 680), it was held that primarily the construction of a rule of a railway company is for the court; but where the rule is ambiguous, and conflicting parol evidence is introduced to explain it, the court may take the advice of the jury on the proper construction to be given the rule. It is our con-

clusion that the second paragraph of the charge criticised, which submitted the applicability of the rules as a whole to the jury, under the conflicting evidence which certainly made an issue as to the applicability of some parts of the rules, was not error in the absence of a request by the defendant for a more specific charge on that subject.

The exceptions to the third paragraph of the charge relating to the rules do not show error under the ruling of this court in *Georgia, Fla. & Ala. Ry. Co.* v. *Sasser,* 4 *Ga. App.* 276 (61 S. E. 505), and the ruling in *Western & Atlantic R. Co.* v. *Bussey,* 95 *Ga.* 584 (23 S. E. 207). These cases hold that rules prescribed by a railroad company are to be strictly construed against the company. Whether the rules were to any extent ambiguous, as related and applied to the facts of this case, would seem to be a question for determination by the jury.

What has been said as to the first three paragraphs of the charge on rules as excepted to applies also to the last two paragraphs.

■ Ground 8 complains of the following charge: "If the plaintiff was injured as alleged, and in the manner alleged, and if the defendant is liable, you would look to the evidence and determine whether or not his injuries are permanent, whether they will continue through his life as alleged. If he was injured as alleged, and if his injuries are permanent, or will continue throughout his life, and if the evidence shows you with reasonable certainty the amount of money he will lose on that account in the future, he would be entitled to recover on that account, if entitled to recover for damages at all."

The exceptions are that this charge did not limit or restrict the jury to a consideration of such alleged injuries of the plaintiff as were established by proof; and that said charge permitted the jury to consider and determine whether or not the plaintiff sustained certain injuries although there was no evidence to support such alleged injuries, and that said charge was confusing and misleading to the jury. We do not think these exceptions are well taken. The court charged the jury that the pleadings were not evidence and that they should not consider any allegation of the plaintiff's petition or amendment thereto, or any allegation in the defendant's answer as amended, unless there was

evidence to support the same. Under the charge as a whole we do not think the jury could have been misled or confused to the harm of the defendant by the charge excepted to.

■ Ground 11 excepts to the charge with reference to expenses incurred by the plaintiff. It is not necessary to consider this assignment of error because the plaintiff has written off $215 from the verdict which covered the only expenses which could have been recovered, and thus cured the error, if there was error, in this charge.

■ Ground 12 alleges error in the following charge: "Failure to exercise ordinary care on the part of the person injured before the negligence complained of is apparent or should have been reasonably apprehended will not preclude a recovery, but will authorize the jury to diminish the damages in proportion to the fault attributable to the person injured." The contention is that the use of the word "authorize" was error and that the jury should have been instructed that any negligence on the part of the plaintiff would "require" that the damages be diminished by the jury in proportion to the amount of negligence attributable to him. This charge may have been harmful error under the ruling in *Atlanta, Knoxville &c. Ry. Co.* v. *Gardner,* 122 *Ga.* 82 (5) (49 S. E. 818), unless the rule of contributory or comparative negligence was given in charge so as to modify, cure or correct the error. It was held in *Georgia Railroad* v. *Pittman,* 73 *Ga.* 325 (3), that such a charge was not error requiring a new trial where the court, in the same connection but "a few paragraphs before" the charge excepted to, charged the rule of contributory negligence in the language of the statute; and in *Krogg* v. *Atlanta & West Point R. Co.,* 77 *Ga.* 202 (6) (4 Am. St. R. 79), it was held that this kind of charge was error but that no harm resulted where, immediately after the charge complained of, other charges corrected it. It appears that the court gave the charge complained of without immediately correcting it or charging further at that time on the subject of comparative or contributory negligence. After the jury had retired the court made this announcement to counsel: "I gave you both notice— I did not charge on comparative negligence. I think it is probably in the case, but don't think I had to charge it unless there was a request." Thereupon counsel for the defendant stated,

"I think you should charge it." The court then directed the sheriff to bring the jury back and proceeded to charge fully and correctly on the subject of comparative negligence.

The defendant relies on the general rule that a charge containing two distinct propositions, one of which conflicts with the other, is calculated to leave the jury in such a confused state of mind that they cannot render an intelligible verdict, and requires the grant of a new trial, as stated in *Tietjen* v. *Meldrim,* 169 *Ga.* 678 (151 S. E. 349), and the rule that instructions which are calculated to mislead and confuse the jury are erroneous, and the error is not cured by the fact that correct instructions are given to the jury in another part of the charge, as stated in *Preston* v. *Ham,* 156 *Ga.* 223, 236 (119 S. E. 658), and in other cases that could be cited. There are well recognized exceptions, however, to these general rules. See *Spalding Lumber Co.* v. *Hemphill,* 77 *Ga. App.* 1 (47 S. E. 2d, 514), and cases cited therein. In the first place, it may be said that the incorrect charge complained of was not necessarily in conflict with the correct charge. The incorrect charge authorized the jury to diminish the damages if the plaintiff failed to exercise ordinary care before the negligence complained of was apparent or should have been reasonably apprehended, whereas the correct charge required the jury to reduce the damages in proportion to the amount of fault attributable to the plaintiff. If the jury was required to reduce the damages it certainly was authorized to do so. In the next place, the charge complained of did not purport to be a charge on the subject of comparative negligence. When the judge announced to counsel that he had not charged on that subject and would not do so unless it was requested, counsel for the defendant made the request. The jury had retired and the court had the jury recalled and gave the correct charge. The fact that the correct charge was given under these circumstances would seem to have removed any confusion, if confusion existed in the minds of the jury as to the proper rule on the subject. While the correct charge was not given in immediate connection with the incorrect charge, it was given under circumstances more favorable to the defendant than it would have been at some other part of the charge. We think that the alleged error in this ground was removed under the rulings in *Georgia Railroad* v. *Pittman,* supra,

*Krogg* v. *Atlanta & West Point R. Co.*, supra, and *Spalding Lumber Co.* v. *Hemphill*, supra. It may be noted also that the charge complained of is the exact language of headnote two in *Western & Atlantic R. Co.* v. *Ferguson*, 113 *Ga.* 708 (39 S. E. 306, 54 L. R. A. 802).

■ The final special ground of the amended motion for new trial avers that the verdict for $65,000 was error "because it was so great in amount and so grossly excessive as to evince undue bias, prejudice and gross mistake on the part of the jury in favor of the plaintiff and against the defendant." Counsel for the defendant state in their brief that this verdict "is far larger in amount than any verdict for personal injuries ever sustained by the appellate courts of this State," and that insofar as the reported cases disclose, the largest verdict heretofore sustained by an appellate court for personal injuries was for $37,500 in the case of *Georgia Ry. & Power Co.* v. *Simms*, 33 *Ga. App.* 536 (126 S. E. 850). But see *Atlantic Coast Line Railroad Co.* v. *Wells*, 78 *Ga. App.* 859 (52 S. E. 2d, 496).

The defendant points out that the only damages recoverable in this case, if the plaintiff was entitled to recover, was such damages as would be reasonable compensation for the injury done, as provided in the Code, § 105-2001; and that, if the plaintiff was entitled to recover, his damages should have been diminished by the jury in proportion to the amount of fault attributable to him, as provided in the Code, § 94-703. The defendant argues that the verdict was unreasonable and excessive because the amount clearly exceeded the full value of the plaintiff's life calculated under the homicide statute. While such argument may be persuasive, it can not be said to be conclusive because the element of pain and suffering, for which the only measure of damages is the enlightened conscience of impartial jurors, is not present in a death claim. The argument that the verdict is excessive because the amount, if invested at the legal rate of interest in this State, would produce an annual return greater than the annual earnings of the plaintiff throughout his life, does not appeal to us as being sound because of the element of pain and suffering and the rule as to damages for that type of injury. The contention is also made that it is reasonably apparent from the amount of the verdict that no reduction of the damages was

made on account of the plaintiff's contributory negligence. This principle was correctly and fully charged. as stated in the preceding division of this opinion and we can not assume that the jury did not consider it in reaching their verdict. Whether or not the plaintiff's life expectancy was less than that of an average person because of his hazardous occupation, and whether it is unreasonable to assume that the plaintiff's earnings at the time he was injured would continue throughout the average life expectancy of a person his age, were questions for the consideration of the jury and were properly submitted to the jury, in the charge of the court, in the absence of any request for a more complete charge on these subjects. The defendant invites a comparison of the verdict in this case with other verdicts in personal injury cases in this State and in other jurisdictions. This comparison is interesting but it can not be conclusive of the question presented here. As Judge Powell said in *Seaboard Air-Line Ry.* v. *Miller,* 5 *Ga. App.* 402, 406 (63 S. E. 299), "The fact that a verdict is greatly larger in amount than the sums fixed usually by juries in similar cases is evidentiary as to bias or mistake, but is not conclusive." To make any comparison of the verdict in this case with any other verdict, that would be of any substantial evidentiary value, we would have to find a case practically similar in all essential details, with substantially the same number and kind of injuries sustained by the plaintiff in this case, and no similar case has been brought to our attention. The arguments and contentions of the defendant to which we have referred are in addition to its main contention that the plaintiff should not have recovered in any amount, and that if the defendant was negligent to any extent, the contributory negligence of the plaintiff was so great that any verdict for the plaintiff should have been much less than the verdict rendered. This contention is covered by the argument on the general grounds of the motion and will be dealt with more fully in our discussion of the general grounds.

Code § 105-2003 states that in torts where the entire injury is to the peace, happiness, or feelings of the plaintiff, no measure of damages can be prescribed except the enlightened conscience of impartial jurors, and that "the verdict of a jury in such a case should not be disturbed, unless the court should suspect

bias or prejudice from its excess or its inadequacy." Section 105-2015 states that "The question of damages being one for the jury, the court should not interfere, unless the damages are either so small or so excessive as to justify the inference of gross mistake or undue bias." The sentence quoted from § 105-2003, and all of § 105-2015, were codified from the decision of the Supreme Court in the case of *Lang* v. *Hopkins*, 10 *Ga*. 37. That case holds on page 46 that "As judges, we are not authorized to substitute our conjectures or apprehensions for the determination of that body on whom the law has devolved the duty of deciding, duly weighing all the circumstances of the case," and that "judges should be very cautious, therefore, how they overthrow verdicts given by twelve men on their oaths, on the ground of excessive damages, upon a matter left so entirely to their discretion, especially where the presiding judge before whom the cause was tried, and who is presumed to have been familiar with all the facts, has refused to interfere. For this court to order a rehearing, under such circumstances, it must be made manifest by *the proof*, that the damages were 'flagrantly outrageous and extravagant.'" *Holland* v. *Williams*, 3 *Ga. App*. 636 (60 S. E. 331). The verdict in this case was found by the twelve jurors and approved by the trial judge. This is in effect the verdict of thirteen men because "as against a motion for a new trial, it takes thirteen men to make a verdict." *Southern Ry. Co*. v. *Miller*, 3 *Ga. App*. 410, 412 (59 S. E. 1115). The importance and weight given under our law to the discretion of the trial judge in passing on motions for new trial, and in giving his approval to the verdicts of juries, is illustrated in the holding that "If the court trying the case does not consider the damages excessive, any other court ought to be cautious in holding them to be so." *Adkins* v. *Williams*, 23 *Ga*. 222 (2).

In the case of *Seaboard Air-Line Ry*. v. *Miller*, 5 *Ga. App*. 402 (supra), which may be regarded as a leading case on the subject of damages, it is held that the presumption is that the jurors were impartial and that they understood the case before them. That case also holds that the right of appellate courts to grant new trials for excessiveness in verdicts must not be exercised unless the verdict is shown to be the result of bias or gross mistake, or shows itself to be so. This test is also applied: "If

the damages are 'monstrous indeed, and such as all mankind must be ready to exclaim against, at first blush,' or (we may add, after mature deliberation), if the thing speaks for itself, the verdict must be considered as the result of bias or mistake for there is no other reasonable hypothesis." In *City of Rome* v. *Davis*, 9 *Ga. App.* 62, 67 (70 S. E. 594), it was held that "The existence of prejudice or bias can not rest upon suspicion. That the verdict was the result of prejudice and bias must be shown." In *Realty Bond & Mortgage Co.* v. *Harley*, 19 *Ga. App.* 186, 187 (91 S. E. 254), this court said, "Before the verdict will be set aside on the ground that it is excessive, where there is no direct proof of prejudice or bias, the amount thereof, when considered in connection with all the facts, must shock the moral sense, appear 'exhorbitant,' 'flagrantly outrageous,' and 'extravagant.' . . It must carry its death warrant upon its face." Although a verdict may be "large and generous," where the evidence abundantly authorized a finding for the plaintiff, this court does not feel authorized under the law to set the verdict aside on the sole ground that it is excessive, there being nothing in the record to indicate prejudice or bias on the part of the jury, and the verdict having been approved by the trial judge. *Seaboard Air-Line Ry.* v. *Vaughn*, 19 *Ga. App.* 397 (3) (91 S. E. 516). See also *City of East Point* v. *Hendrix*, 27 *Ga. App.* 485 (108 S. E. 623) ; *Atlantic Greyhound Corp.* v. *Austin*, 72 *Ga. App.* 289, 292 (33 S. E. 2d, 718). The period of inflation now exising was a factor which the jury could consider in arriving at the amount of their verdict. See *Seaboard Air-Line Ry.* v. *Miller*, 5 *Ga. App.* 408 (supra), *Ocilla Southern R. Co.* v. *McInvale*, 26 *Ga. App.* 106 (105 S. E. 451), and *Atlantic Coast Line Railroad Co.* v. *Wells*, 78 *Ga. App.* 859 (supra).

The plaintiff alleged and the jury was authorized to find that the plaintiff lost his right leg below the knee, which incapacitated him from continuing his work as a railroad switchman; that injuries to his chest included eight broken ribs, some of which punctured the lung causing it to collapse and filling the pleural cavity with blood which necessitated an operation, which injuries were likewise permanently disabling because of a deformed chest and difficulty in breathing; that his left shoulder was broken, resulting in a deformity and limitation in the use of his arm and

hand; that he sustained certain injuries to his back bringing about a disability requiring the use of a steel brace; and that from these multiple injuries, very largely permanent in character, he had suffered and would continue to suffer severe physical pain and mental anguish. It appears that the plaintiff was in the hospital for about three months, that he was under an oxygen tent for ten days or two weeks on account of great difficulty in breathing, that although he was injured on June 6, 1946, because of his condition it was more than a month before the mangled leg could be properly amputated and treated, that a number of blood transfusions and two operations on his leg were required, and that his nerves were impinged in such a manner as to cause great pain and necessitating the killing of the sciatic nerve. He sued for all of these injuries, briefly summarized, and for past and future pain and suffering, physical and mental, that accompanied these injuries, and also for loss of earnings from the date of the injury until the time of the trial, almost two years later, and for lost earnings in the future on account of his inability to work. The plaintiff was earning approximately $10 per day, on a regular 7-day-a-week job. Although the evidence did not show that he worked every day in every month of the year, or exactly what his income was for any particular month, it was sufficient to show a substantial loss in his earnings on account of his injury. The evidence also showed that the plaintiff was in the best of health before his injuries, and was 50 years of age at the time he was injured. Under the Carlisle Mortality tables his expectancy at age 50 was 21.11 years.

Under all the facts and circumstances of this case, and the rules of law we have set forth respecting damages for personal injuries, including the rule as to pain and suffering which is always the enlightened conscience of the jury, we have come to the deliberate conclusion, after much careful thought and consideration, that this court is not authorized to set the verdict aside on the ground that it is excessive. It may be a larger verdict than some of the individual members of this court would have found had they been on the jury trying the case, but we cannot set it aside for that reason. The jury saw the plaintiff as he appeared on the witness stand, and heard his description of the various injuries he had sustained, and the jury saw the

other witnesses and heard their testimony, and they found the verdict which is under attack without any evidence as far as the record discloses of undue sympathy for the plaintiff, or bias or prejudice for or against the plaintiff or the defendant. That verdict has come to this court with the approval of the eminent trial judge, who was in a sense the thirteenth juror, and for whose judgment this court has great respect and esteem. We cannot, therefore, impute bias or prejudice to the jury, where nothing appears in the case authorizing us to do so, nor can we hold that the judge abused his discretion in approving the verdict and in overruling the motion for new trial merely because of the size of the verdict.

■ In considering the general grounds of the motion for new trial this court must construe the evidence most favorably to the plaintiff as the prevailing party. Every presumption and inference is in favor of the verdict. *Bowie Martin Inc.* v. *Dews,* 73 *Ga. App.* 73 (2) (35 S. E. 2d, 577), and cits. The plaintiff was a switchman employed by the Central of Georgia Railway Company. His duties required him to assist in the movement of trains from the Terminal Station to the Union Station in the City of Atlanta, and he was so engaged on the day he was injured. The plaintiff was riding on a train known as "The Southland" which was being moved from the Terminal Station to the Union Station, and was stationed about four cars from the engine on the engineer's side as it backed into the Union Station. It is contended, and the evidence tended to show, that the plaintiff's duties required him to keep in touch with the trainmen on the rear end of the train and relay signals to the engineer so that the train might be stopped when it reached its proper position alongside the shed. The track curved and the plaintiff got off his train so he could see his engineer and the rest of his train. About the time or shortly after the plaintiff alighted from his train, in the performance of his duties, he was struck by a switch engine of the defendant which was also backing into the Union Station on a parallel track. The plaintiff contended and testified that he had alighted from his train, after looking back and not seeing or hearing anything coming, and was walking between the two tracks in the direction of the station absorbed in

his duties, and had walked approximately 30 feet before he was struck by the switch engine, which gave no warning of its approach by the tolling of its bell or the blowing of its whistle. The plaintiff contended that in trying to pass a concrete hose box and hose attached to it, he turned to his left and was close to the end of the cross-ties of the adjacent track when he was struck by the engine. Other evidence offered by the plaintiff tended to show that shortly before the plaintiff was struck the switch engine was not ringing its bell and that the plaintiff had alighted from his train and was walking as he contended with his hand up giving a slow signal to his engineer, and that he had walked in this manner from 8 to 12 feet before he was struck.

The defendant offered testimony tending to support its contention that the plaintiff swung off his train almost immediately in front of the switch engine, and that the plaintiff did not look back in the direction from which the switch engine was approaching before he swung off of his train, and gave no indication of his intention to alight from his train, and that the switch engine was stopped as quickly as possible after the plaintiff alighted from his train, and that it was not possible to avoid striking the plaintiff.

We think the determining factor in this case is whether the plaintiff alighted from his train as contended by him and had walked some distance before he was struck, or whether he alighted from his train in such close proximity to the approaching switch engine as to make it impossible for the engineer to avoid striking him. If he was walking between the tracks as he contended, the trainmen in charge of the switch engine should have observed his presence and should have exercised ordinary care to avoid striking him. The jury was authorized to find that the plaintiff was not a trespasser at the time he was struck. If the plaintiff alighted from his train immediately in front of the approaching switch engine, an entirely different situation appeared and the defendant would not be liable unless it failed to exercise ordinary care with respect to the plaintiff after his presence in front of the engine became known to them. The issue made by these conflicting contentions and theories as to how the plaintiff was injured was clear cut and sharply drawn by the testimony

in the case. The jury resolved that issue in favor of the plaintiff and we cannot say that the evidence did not support their finding. The issues as to whose negligence was the proximate cause of the plaintiff's injuries, and the extent of the plaintiff's alleged contributory negligence, were also jury questions. They were properly submitted to the jury in the charge of the court, and the general grounds of the motion show no cause for reversal.

The court did not err in overruling the motion for new trial.

This case was considered by the whole court as provided by the act approved March 8, 1945, Ga. L. 1945, p. 232.

*Judgment affirmed.* *Sutton, C. J., MacIntyre, P. J., Gardner and Townsend, JJ., concur. Felton, J., dissents.*

FELTON, J., dissenting. I think that under the pleadings and evidence a verdict for the defendant was demanded. As the opinion of the majority does not set forth the pleadings, evidence or issues in enough detail, it will be necessary for me to do so in order to make clear the grounds of this dissent. The petition as amended alleged substantially as follows: That the plaintiff was employed by the Central of Georgia Railway as a switchman; that, among other things, it was his duty to assist in carrying trains from the Terminal Station to the Union Station in the City of Atlanta, and in such movement to give signals, to pass signals from one member of the crew to another, to throw switches, and to couple and to uncouple cars and engines; that on or about June 6, 1946, shortly after 10 a. m., pursuant to his duties, the petitioner was on a train known as "The Southland," which was in the charge of the defendant's employees and was being run from the Terminal Station to the Union Station, as aforesaid; that as said train was being backed towards the Union Station, the plaintiff was riding on the steps of the fourth or fifth car from the engine, on the engineer's side, in order to perform his duties of passing signals from the switchman or the conductor on that end of the train next to the Union Station to the engineer on the other end thereof; that said train was composed of approximately twelve cars, and as it arrived at the western end of the butterfly shed of the Union Station, it was being run in an easterly direction along track 3; that said train was being pushed by its engine, which was located at the western end of same; that said movement was one that customarily took place

each day of the week; that a conductor was on the forward end of said train for the purpose of giving signals to the petitioner, who, in turn, was to relay same to the engineer so that the train might be stopped when it was in proper position alongside the shed, for the purpose of allowing passengers to embark thereon, and for the lowering of baggage, express and U. S. mail; that track 3, to the west of said station, curves towards the south, and towards the eastern part thereof, it curves to the north; that paralleling track 3 and to the north of same was another track known as track 2; that, as was usual and customary, the petitioner alighted from his train upon a crossing near the western end of said butterfly shed while it was still in motion, for the purpose of relaying signals and uncoupling the engine and one car from said train, so that said car might be delivered to the defendant railroad; that, after doing so, in order to get in a position where he could be seen by his engineer, petitioner walked between track 2 and track 3 in an easterly direction, going to the left of a permanent concrete box-like opening for water, which was about 18 inches wide, 2 feet long, and 12 inches high, from which a line of heavy rubber hose extended in an easterly direction; that in so doing, he walked within about 18 inches of the southern rail of track 2; that he had been walking for about 35 or 40 feet, engrossed in the performance of his duties, all the while looking ahead for a signal from the lead flagman, when he was run into and struck by an engine of the defendant in charge of the defendant's engineer; said engine was then and there being driven over track 2 in an easterly direction; that said engine was being driven at the great, rapid and reckless rate of speed, to wit, the speed of 25 miles per hour; that the bell of said engine was not being tolled; that the whistle on said engine was not being blown or other warning given by the defendant; that the petitioner did not know of the approach of said engine nor was he given any warning thereof by any person; that the plaintiff's left shoulder and left side were hit by the corner of the tank of said engine, inflicting upon him severe bodily injuries; that there was a municipal ordinance of the City of Atlanta limiting speeds of trains within the city limits to 20 miles per hour; that at and about the place where plaintiff was injured, employees of the roads using the Union Station, and

station employees, were constantly passing alongside and over said tracks in question, giving signals, inspecting equipment, servicing coaches, unloading express and mail, and the like, all of which, in the exercise of ordinary care, should have been known to the defendant and its engineer; that in the exercise of ordinary care, the defendant's engine should have been run at no greater rate of speed than 3 or 4 miles per hour, and the bell should have been constantly tolled; that the defendant had a servant riding upon a stirrup on the engineer's side on the end of the tank of said engine for the purpose of looking out ahead and giving signals to said engineer; that the petitioner was in a position between tracks 2 and 3 where he could have been seen by said trainman of the defendant for at least 250 or 300 feet before he was struck, but he failed to keep a strict lookout and he gave no warning signal to the petitioner or to his engineer to slow down or stop; that the following negligent acts of the defendant were the direct and proximate cause of the plaintiff's injuries: (a) In driving said engine at a speed in violation of said ordinance, (b) In driving said engine at the great, rapid and reckless speed aforesaid, having in view the character and use of that part of the station grounds, (c) In failing to constantly toll the bell of said engine at the time and place in question, (d) In failing to give the petitioner any warning by bell, whistle, or otherwise, and (e) In not keeping a strict lookout ahead, and (f) In failing to so control the movement and regulate the speed of said engine to avoid doing injury to the plaintiff.. The defendant in its answer alleged that the original plaintiff (hereinafter, the deceased will be referred to as the plaintiff, he having died and his administrator having been made a party plaintiff after the denial of motion for a new trial) swung off the train on which he was riding so close in front of the defendant's engine that it was impossible to stop or materially slacken the speed of the defendant's engine before it struck the plaintiff; that at the time of the injury there was in effect a valid and binding rule of the defendant railroad governing the conduct of the defendant's employees and governing the conduct of the plaintiff while on the tracks and right-of-way of the defendant, which provided: "Do not rely upon others to give notice of the approach of an engine or train"; that the plain-

tiff violated the rule relied on by the operators of the defendant's engine to give notice of the approaching engine and did not look back in the direction of the defendant's engine approaching on an adjacent track and that such negligence was the proximate cause of the injury; that the plaintiff was negligent in the following particulars: (a) In swinging off his moving train immediately in front of the defendant's approaching engine, (b) In failing to look back in a reasonably diligent manner along the adjacent track for approaching engines or trains before alighting from his moving train, (c) In failing to look back in a reasonably diligent manner along the adjacent track for approaching engines or trains before alighting from his moving train in view of his familiarity with the use of such track and his knowledge of the presence of the defendant's engine on such track and of its expected movement over such track, (d) In failing to look back in a reasonably diligent manner along the adjacent track for approaching engines or trains immediately after he alighted from his moving train, (e) In failing to remain in a place of safety in the clearance between his train and the defendant's engine after he alighted from his moving train, (f) In assuming a position of peril so close to the defendant's southbound main line track to be struck by an engine approaching from his rear, (g) In assuming and remaining in a position of peril so close to the defendant's track that a train could not pass without striking him, as he walked south between such tracks, (h) In failing to look back along the track, for trains or engines approaching from his rear on such track. The allegation that the defendant was negligent in failing so to control the movement and regulate the speed of the engine as to avoid doing injury to the plaintiff was stricken on demurrer and the judge in his charge eliminated the issue raised by the allegation that the defendant's engine was being operated at 25 miles per hour. The remaining acts of negligence in the case were: (a) excessive rate of speed, having in view the character and use of that part of the station grounds; (b) in failing to constantly toll the bell; (c) in failing to give warning; and (d) in not keeping a strict lookout ahead. The plaintiff testified as follows: "I saw N. C. engine No. 536 standing still there on the southbound main line just north of Foundry Street. . . I had seen

that movement of that engine backing up from time to time on many occasions. So, when I saw that engine I knew why it was there, and I knew what it was going to do; back up over track 2, and I knew that track 2 was the adjoining and parallel track with track 3 that my train was on. . .. I would not pay any attention to the engine across a few tracks. I have about all on my mind for the safety of my train and passenger and workmen that I can attend to. . . When our crew went over into the W. & A. yard, we were governed by the W. & A. rules. As to whether or not I was familiar with those rules, well, I am pretty familiar with all the rules. We were governed by the operating rule of the N. C. or the W. & A. Railroad after we got on their property; that is correct. As to whether I was familiar with the rules of the N. C. Railroad which provides 'do not rely upon others to give notice of an approaching engine or train. . .' I cannot say that I knew that rule. I don't recall reading it. I guess I have heard of that rule. . . As to whether that was one of the rules I was required to obey when I went on the W. & A. tracks, that's the rule. . . When I swung off my train, I started walking south immediately. I did not stand there. As to how fast I was walking, I guess two or three miles an hour, just about as fast as my train was running, and *after I started walking close to the rail along track 2 I never looked back along track 2 to see if any train was coming,* because I was not expecting anything to pass us. . . At the place where I was hit by the engine there was sufficient clearance between the tracks to stand in a place of safety between trains on adjoining parallel tracks. . . Had I known that a train or engine was approaching on track 2 I could have stood between the tracks and let it go by." (Italics ours.)

The rule, above referred to, relieved the defendant from any duty to the plaintiff as to any of the specifications of negligence left in the case after the evidence was all in. The petition did not allege wilful and wanton conduct and the specification of negligence which would have made the doctrine of last clear chance applicable was stricken from the petition and the judge specifically charged the jury that the plaintiff's engrossment in the performance of his alleged duties would not excuse him from exercising care for his own safety. His own testimony shows

that he was not so engrossed and was at all times cognizant of the dangers incident to his situation. The rule by which the plaintiff admitted he was bound placed him virtually in the status of a trespasser in his relation to the defendant in which the defendant would only be liable for wilful and wanton conduct or negligence under the last clear chance doctrine under circumstances where the plaintiff was negligent and the defendant was under duty by reason of the plaintiff's inattentiveness and lack of awareness of his danger to exercise ordinary care to avoid injuring him. Neither of these grounds of liability is in this case by reason of the rulings on the specifications of negligence stricken, and the plaintiff's evidence as to his being aware of his danger. In view of the rule, and what has just been said, the ruling in *Richmond & Danville R. Co.* v. *Watts*, 92 *Ga.* 88 (17 S. E. 983) is applicable to this case. It was the plaintiff's duty to keep a lookout, to look back and see whether a train was coming. His failure to do so was the proximate cause of his injuries. There is no evidence that the operators of the defendant's engine realized that the plaintiff was not going to look back for the oncoming engine in time to warn him or otherwise avoid injuring him. Under the pleadings and evidence the defendant was guilty of no negligence. The injuries received by the plaintiff, now deceased, were due solely to his failure to exercise ordinary care for his own safety.