## 51014. NATIONAL TRAILER CONVOY, INC. et al. v. SUTTON.

CLARK, Judge.

Was the plaintiff's $91,000 verdict by reason of its amount so excessive on the facts as to justify the inference of prejudice, undue bias, or gross mistake? That is the principal problem presented for determination here. Other matters contained in the twelve enumerations of error deal with the timing and content of hypothetical questions presented to expert witnesses and attacks upon the judge's charge to the jury.

National Trailer Convoy, Inc. and Midland Insurance Company as defendants below have taken this appeal directly from a judgment for $91,000 entered against them upon a verdict in that amount obtained by plaintiff Sutton. Plaintiff's suit against the motor common carrier and its insurer sought damages for his personal injuries, medical expenses, loss of earnings and property damage. It was based on negligence by the driver

of defendants' truck which ran into plaintiff's vehicle from plaintiff's rear as plaintiff was signaling by means of a blinker light his intention to make a right turn into his home driveway.

1. We deal first with the eleventh enumeration of error contending that the "verdict is so excessive as to justify the inference of prejudice, undue bias, or gross mistake, and is such as to shock moral sense, and indicate that the Jury was actuated by undue influence or improper motives."

This assignment is limited necessarily to "inference," there being no direct evidence of passion or prejudice to show the existence of those inculpatory elements which would require reversal. Appellants note the defendants were "foreigners" and that one is an insurance company and the other a trailer convoy concern. This situation of "target defendants" must be considered but standing alone it is not sufficient. "The existence of prejudice or bias can not rest upon suspicion." *City of Rome v. Davis,* 9 Ga. App. 62, 67 (70 SE 594). Our examination of the record shows plaintiff had 23 relatives residing in Tift County but this fact of numerous kinfolk is not shown to have in any way influenced the verdict.

In the present instance the appeal was taken directly from the judgment entered on the verdict and without having first filed a motion for new trial. Thus "the buck stops here" without benefit of the views of the "13th juror," the trial judge whose views are accorded great weight by appellate courts. See *Southern R. Co. v. Miller,* 3 Ga. App. 410 (59 SE 1115) and *St. Paul Fire &c. Ins. Co. v. Dillingham,* 112 Ga. App. 422 (145 SE2d 624).

Appellant emphasizes the quantum of special damages as contrasted with the total of $91,000 and urges the verdict to be so large as to justify a belief that it could not reasonably have resulted from any other cause than bias or gross mistake on the part of the jury. In support of this contention appellant cites the rulings to this effect in *Western & A. R. Co. v. Young,* 83 Ga. 512 (10 SE 197), *Seaboard Airline R. Co. v. Miller,* 5 Ga. App. 402 (1) (63 SE 299), *Swift & Co. v. Lawson,* 95 Ga. App. 35 (8) (97 SE2d 168), and *Western & A. R. Co. v. Wright,* 79 Ga. App. 733 (4) (54 SE2d 655).

Appellants compute the special damages to be $5,995 in the way of damages to plaintiff's vehicle and for medical expenditures and loss of earnings up to the date of trial. Plaintiff disagrees, asserting these special damages to be $8,000.33. In either event, after taking into consideration future estimated medicals and various elements of recoverable damages, it is clear that a substantial portion of the verdict was based upon the important, intangible pain and suffering, which is governed by no standard save that of the enlightened consciences of the jurors. *Trammell v. Atlanta Coach Co.,* 51 Ga. App. 705 (2) (181 SE 315). We cannot invade the deliberations of the jury to find out what motive or influence entered into their conclusion. We must also recognize that "On appeal the evidence is to be construed to sustain, rather than to destroy the verdict, for every presumption and inference is in its favor. [Cits.]" *Atlanta Coca-Cola Bottling Co. v. Jones,* 135 Ga. App. 362, 368 (218 SE2d 36).

Amounts awarded in other cases are of slight use in determining excessiveness because "to make any comparison of the verdict in this case with any other verdict, that would be of any substantial evidentiary value, we would have to find a case practically similar in all essential details, with substantially the same number and kind of injuries sustained by the plaintiff in this case, and no similar case has been brought to our attention." *Western & A. R. Co. v. Burnett,* 79 Ga. App. 530, 541 (54 SE2d 357).[1]

It is important to note that there is no question of liability. Defendants were handicapped in being unable to produce their driver and the vigorous and astute cross examination by defense counsel did not result in raising a question of comparative negligence (even though charge included this possibility).

Undoubtedly one of the most cited quotations in dealing with this question is the colorful language

---

[1]The court noted at page 543 that the jury could consider "the period of inflation now existing." That was in 1949.

contained in *Realty Bond &c. Co. v. Harley,* 19 Ga. App. 186, 187 (91 SE 254): "Before the verdict will be set aside on the ground that it is excessive, where there is no direct proof of prejudice or bias, the amount thereof, when considered in connection with all the facts, must shock the moral sense, appear 'exorbitant,' 'flagrantly outrageous,' and 'extravagant.' 'It must be monstrous indeed and such as all mankind must be ready to exclaim against at first blush.' It must carry its death warrant upon its face."

In the light of this standard, we examine the facts before us. At the time of the collision plaintiff was 63 years of age with a life expectancy of 14.14 years and in good health. In addition to his employment as school bus driver, he owned and operated a farm where he performed plumbing, carpentry, painting and similar activities.

We continue in our recital of the facts by quoting from the appellee's brief which we found to be supported by the transcript. It reads as follows: "As a result of the collision, plaintiff's right ear was almost completely cut off, he had contusions to his head, contusions to his back, abrasions to his face, contusions and bruises to both legs, injuries to his right knee, neck injuries, chest injuries and a collapse of both lungs. At the emergency room of the hospital, plaintiff was in shock, suffering from a loss of considerable blood and his condition was critical. It took between 50 and 100 stitches to sew up his wounds. Plaintiff remained in the hospital for 9 days in severe pain. He was confined to his home for approximately one year, unable to even drive an automobile. Plaintiff wore a neck brace for approximately one year, saw his doctor frequently, took physical therapy treatment, took drugs and medicine and followed other long-range treatment of his doctors. The plaintiff has been in constant pain since the date of the collision to the present time and has been unable to pursue any type of gainful employment. The injury to plaintiff's right knee causes his knee to occasionally lock up and his knee is sensitive. The range of motion of plaintiff's neck is extremely limited and he is unable to turn his head back or to either side without turning his shoulders and body. The plaintiff has not had a single day free of pain since the date of the collision in spite of the fact that he takes pain pills and other drugs

daily. His drug bill runs approximately $40 per month.

"Two doctors testified that his injuries were caused by the wreck and that the injuries to his cervical spine are permanent. Although there was some evidence revealed by x-rays that the plaintiff may have had mild degenerative arthritis in his cervical spine before the accident, the plaintiff was unaware of it, he had never had any pain from it and had never been treated for such a condition. Plaintiff's family doctor testified that the plaintiff was in generally good health prior to the subject collision. The medical testimony also showed that the injuries sustained by the plaintiff would greatly aggravate the pre-existing dormant arthritis.

"The evidence also showed that the plaintiff had considered having his right knee operated on and had consulted several doctors concerning this, but that he had been advised against such an operation. The evidence authorized a finding that the injury to his knee was also permanent."

Recognizing that sums found for future pain and suffering are not reducible to present cash value (*Southern R. Co. v. Bottoms,* 35 Ga. App. 804 (2) (134 SE 824); *Bagley v. Akins,* 110 Ga. App. 338 (138 SE2d 430)) it cannot be said, under the recited facts, that the verdict is such as to justify the inference of gross mistake or undue bias. As was said in one of this court's early decisions: "The law fixes no measure for pain and suffering except the enlightened conscience of impartial jurors, and perhaps the force of the complaint that the verdict is too large would be weakened if any one of us could substitute ourselves for the plaintiff in any particular case, and were forced ourselves to endure the suffering that the plaintiff endured. In any event, in the absence of plain proof that the verdict was the result of prejudice or bias, this court will not interfere." *City of Rome v. Davis,* 9 Ga. App. 62, 67 (70 SE 594).

2. The first enumeration contends that "The trial court erred in failing to charge, even without request, the principle of law that the verdict must be the unanimous conviction of all the jurors." There is no merit to this enumeration because this omission was not complained of in the trial court before verdict and we do not regard such

failure to be harmful as a matter of law. Code Ann. § 70-207 (a, b) (Ga. L. 1955, pp. 18, 31; 1966, pp. 493, 498; 1968, pp. 1072, 1078); *Edwards v. Adams,* 117 Ga. App. 508 (4) (160 SE2d 841); *Butts v. Davis,* 126 Ga. App. 311 (9) (190 SE2d 595).

3. The second assignment of error presents a question as to trial procedure in that it deals with time in the production of expert testimony. Appellants assert error because at the time plaintiff's doctor was placed on the stand there had not yet been presented in evidence some of the facts which were assumed in the hypothetical questions. This situation also occurred as to subsequent physicians. Upon objection by defense counsel that the hypothetical questions included assumed facts not yet proven, plaintiff's attorney in every instance assured the court that he expected during the course of the trial to prove by competent evidence every fact that had been assumed. On each occasion the trial judge stated as follows: "The court overrules the objection with this statement to the jury. You will understand that this is a hypothetical question based upon certain assumptions of fact. You will consider this question and answer thereto only in the event that you find each fact assumed in the hypothetical question as supported by evidence to your satisfaction during the course of the trial. Otherwise, you will not consider the question or answer thereto."

Appellant relies upon the first headnote in *Ellis v. Southern R. Co.,* 89 Ga. App. 407 (79 SE2d 541). That headnote does state that a witness should not be permitted to give his opinion on facts contained in a hypothetical question prior to the introduction of such facts. However, the body of the opinion by Judge (later Justice) Quillian shows that this ruling was not based on the time during the trial when the hypothetical question was propounded. Instead, the decision rested upon the requirement of Code § 38-1710 that the opinions of experts "may be given on the facts as proved by other witnesses." Judge Quillian further clarified the headnote in a subsequent discussion which is in *Mutual Ben. Health &c. Assn. v. Hickman,* 100 Ga. App. 348 (111 SE2d 380). In this *Hickman* decision he specifically declared that "the true rule" is expressed in *Flanagan v. State,* 106 Ga.

109 (32 SE 80). Then at page 362 he cited those cases which supported this conclusion: "[A]n expert witness's opinion may be predicated upon facts placed in evidence by the testimony of other witnesses or by any other legal means." See also *Morgan v. Bell,* 189 Ga. 432, 438 (5 SE2d 897) and *Yarbrough v. Yarbrough,* 202 Ga. 391 (8) (43 SE2d 329).

It is an established custom to place expert witnesses, especially doctors, on the stand as soon as they become available in court. In fact, in the case at bar, one of the three doctors was permitted to testify without objection out-of-turn at the conclusion of the direct examination of a state trooper whose cross examination was postponed until after the doctor had completed his testimony.

As there was introduced in evidence, either before or after the testimony of the expert witnesses, all of the material facts assumed in the hypothetical question, we find no merit to this enumeration.

4. In the next four enumerations of error (3, 4, 5 and 6) the same question as to timing of the hypothetical questions is again presented and need not again be discussed. Additionally on these assignments, appellant argues as to other medical testimony that the record does not show facts to have been introduced during the trial to support certain specific assumptions which were included in the questions. In reply, the appellee has pointed out those portions of the record wherein these matters were presented by competent evidence sufficient to provide the necessary foundation. Accordingly, we find no merit in these four assignments.

5. As enumerations numbered 7 and 8 are expressly abandoned we deal next with the 9th enumeration. This reads as follows: "The lower Court erred in failing in its charge to the jury to give the contention of the Defendants as set forth in their Fifth Defense which was that if the truck driver was negligent, the negligence of the Plaintiff was equal to or greater than the alleged negligence of the truck driver and hence Plaintiff was not entitled to recover."

The charge given by the court included the various legal principles usually given in negligence cases. These instructions included the duty of the plaintiff to exercise

ordinary care for his own safety (T. 213) and that the plaintiff could not recover if his injuries and damages were not due to negligence of the defendants but of the plaintiff himself. (T. 213, 214). At page 216 the court prefaced the instruction with the statement "I am going to give you a principle of law known as the Comparative Negligence Doctrine" which was then done.

Additionally, the judge stated the contentions of the parties and added the following: "I have not attempted to review or summarize all of the contentions of the respective parties in this case. You will have the pleadings out with you and while they are not evidence they may be and should be referred to by you for a more specific elaboration of the contentions of the respective parties in this case."

In view of the manner in which the trial judge worded his charge, we find no merit in the ninth assignment.

6. The next enumeration (No. 10) attacks that portion of the charge wherein the trial judge prefaced his instruction with the words: "applied to the defendants." An examination of the entire charge shows that the court made clear that all principles of law were applicable to both plaintiff and defendants. We therefore find no error. In this connection, it is appropriate to remember the words of the legendary Logan Bleckley in *Cherry v. Davis,* 59 Ga. 454, 456: "The court erred in some of the legal principles announced to the jury; but all the errors were harmless. Any directions which do not put the traveler out of the way, furnish no reasons for repeating the journey."

7. The final enumeration of error that the verdict is contrary to evidence and without evidence to support it is without merit.

*Judgment affirmed. Pannell, P. J., and Quillian, J., concur.*

SUBMITTED SEPTEMBER 3, 1975 — DECIDED NOVEMBER 6, 1975 — REHEARING DENIED NOVEMBER 26, 1975 — 

*Owens & Hilyer, Seymour S. Owens,* for appellants. *Reinhardt, Whitley & Sims, Glenn Whitley,* for

appellee.